**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**L. D. HAWKINS, Appellee.**

No. 7431.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 25, 1965.

Rehearing Denied Feb. 22, 1965.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

John W. Herrick and Massie Tillman, Fort Worth, for appellee.

DENTON, Chief Justice.

This is a workmen's compensation case. Texas Employers' Insurance Association has appealed from a judgment based on a jury verdict finding L. D. Hawkins to be totally and permanently incapacitated as the result of a low-back injury sustained on October 4, 1960, while lifting a heavy pipe. The first trial of this case resulted in a judgment for the claimant for total temporary incapacity for a period of one week. That judgment was reversed and remanded on the ground the trial court gave an incorrect definition of "total incapacity." Tex.Civ.App., 363 S.W.2d 788, affirmed Tex., 369 S.W.2d 305. That question is not before us on this appeal.

Appellant's first four points of error contend there is no evidence to support the

finding of total and permanent incapacity, and no evidence to support the finding of no partial incapacity; and such findings are against the great weight and preponderance of the evidence as to be manifestly unjust. The trial court correctly defined "total incapacity" and "partial incapacity" as follows:

"The term TOTAL INCAPACITY does not imply one's absolute inability to perform any kind of labor, but means that one must be so incapacitated that he becomes disqualified for performing the usual tasks of a workman to such an extent that he cannot procure and retain employment."

"By the term 'partial incapacity' is meant incapacity less than total where an employee, by reason of injuries sustained in the course of his employment, is only able to perform part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or he is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depreciation or reduction in his earning capacity."

These points of error require a brief summary of the evidence and to consider the evidence in like of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

█ We are aware of the well-settled rule that an employee may be totally and permanently incapacitated under the workmen's compensation act although he continues to work and earn money. Trinity Universal Ins. Co. v. Scott, (Tex.Civ.App.), 342 S.W.2d 348, (Refused, NRE), and the many authorities cited therein. However, the evidence may be such that it will not support such a finding; in which event it is the court's duty to remand the cause for a new trial.

█ Evidence which tends to support the jury verdict is that Hawkins, an experi-

enced boilermaker, was admittedly injured in the course of his employment while lifting a heavy pipe on October 4, 1960. Dr. Gerald King testified by deposition that Hawkins suffered a probable ruptured disc; he was of the opinion he was totally disabled from performing labor which required him to bend, lift, stoop, climb ladders, and get in awkward positions; and that this disability would be permanent. Dr. James Holmes examined Hawkins and was of the opinion he had sustained nerve root compression, probably from a ruptured disc. Hawkins testified he wore a back brace every day and that he could not perform work requiring bending, lifting, and stooping; that he had continuous pain in his back; and that his back was in about the same condition it had been since October of 1960. Fellow workmen who had worked with Hawkins since the injury testified to his inability to stoop, bend, and lift heavy objects. Hawkins testified the reason he had worked almost continually the three years since the injury was to pay off notes on his pickup truck and a lot and "I still like to eat." In viewing the evidence most favorable to the verdict, we conclude there is evidence to support the finding Hawkins was totally and permanently disabled.

In considering all of the record, we conclude that as a matter of fact Hawkins was not totally and permanently disabled. The record shows Hawkins returned to work on December 14, 1960, some ten weeks after receiving the injury. He was assigned to this job, as well as the subsequent jobs, by his union. He continued to work for the Riley Stoker Corporation from December 14, 1960, until April 5, 1961, and received $3.85 per hour, the same hourly wage he was receiving at the time of his injury. After completing the work for Stoker, he went to work almost immediately for Monical & Powell. He was employed as a boilermaker and was paid at the rate of $3.90 per hour. This work continued until September 26, 1961. Hawkins testified he worked as a regular boilermaker on one of the jobs and "flagging the rig" and cleaning

bolts on the other, but that neither of these jobs required him to use his back. Following the Monical & Powell job he worked for Nuder Construction Company. He left this job after one month to go to Fort Worth to be examined by Drs. King and Holmes. He then went to Stinnett, Texas where this case was tried the first time. He received $3.90 per hour for a forty-hour week while working for Nuder, where he served as a steward, which is a representative of the union on the job and handles grievances. In his absence his job with Nuder was filled and within four or five days he began work for Riley Stoker a second time on a job for Monsanto at Chocolate Bayou and was employed as a boilermaker supervisor or subforeman at an hourly wage of $4.35 for a forty-hour week. This job lasted until May of 1962. He worked for M. B. J. & Bundick from June of 1962 until September of that year with some time off in that period because of a strike called by the millwrights. Hawkins then worked on successive jobs for Erlick Construction Company, Catalytic Construction Company, and Kirkley & Chambers. Only a few days elapsed between these jobs for the various companies named, and he remained on the jobs until they were completed. On the Erlick job he was assigned as a steward but was carried on the payroll as a boilermaker. His pay rate on that job was $4.10 per hour. In the other two jobs he served as boilermaker foreman at the rate of $4.60 per hour. Hawkins' next employment was with A. M. Lockett where he worked as a boilermaker foreman from June 19, 1963, until November 6, 1963, at the rate of $4.60 per hour. Of the one hundred working days of his employment with Lockett, Hawkins worked ninety-five days. Three of the five remaining days were holidays, and two days' work was lost because of rain. Following the Lockett job he worked three days in Fort Worth for Riley Stoker on a boiler job for Dallas Light & Power Company. The record does not indicate his duties or hourly wage on this job. At the time the present

suit began on December 17, 1963, Hawkins was subforeman on a job that was to continue for approximately five months. It is conceded Hawkins had worked "pretty well continuously ever since the time" of his injury in October of 1960 until the time of the trial. But he contends he was unable "to perform the usual tasks of a working man such as bending and lifting and stooping." All of Hawkins' jobs, both before and after his injury, were assigned to him by his union business agent. Hawkins was qualified as a boilermaker foreman and subforeman. It was contrary to union rules for a foreman or subforeman to "work on the job." Hence no stooping or bending was apparently required to handle these jobs. Hawkins was examined by Dr. A. Ross Davis on June 21, 1961, at the defendant's request. By deposition Dr. Davis testified he was of the opinion Hawkins had not suffered a ruptured disc, but had sustained a lumbar sprain which would not produce a permanent incapacity. Hawkins had received no treatment since January 23, 1961, and had not seen any doctor since October 27, 1961, when he was examined by Drs. King and Holmes for the purposes of giving their depositions on that date.

It is apparent from Hawkins' counsel's questions directed to his witnesses and the jury argument that his contention throughout the trial was that Hawkins' total incapacity was based on his inability to perform a job requiring him to bend, stoop and lift. This contention restricts the approved definition of total incapacity. "An employee is not entitled to recover for total incapacity merely because he is unable to procure and retain employment in his usual occupation. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular one trade or occupation." Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000. A boilermaker foreman or subforeman are related occupations to claimant's pre-injury trade. It is uncontradicted Hawkins was a highly competent and

472

qualified boilermaker subforeman and foreman. The evidence is clear Hawkins' condition did not, in the three years between the injury and second trial, prevent him from procuring and retaining regular, well-paying employment in the same field he was engaged in prior to the injury. In our opinion his work record is not one of a person totally incapacitated. He had a continuing earning capacity. We are convinced the jury finding of total and permanent incapacity was against the great weight and preponderance of the evidence. Appellant's points of error one and two are overruled; the third and fourth points of error are sustained.

Appellant has brought forward other points of error dealing, among other things, with alleged improper jury argument and lump sum recovery. In view of our disposition of this case, we shall not pass upon the other points since they would probably not arise in another trial.

The judgment of the trial court is reversed, and the cause is remanded for another trial.