The COMMERCIAL INSURANCE COMPA-
NY OF NEWARK, NEW JER-
SEY, Appellant,

v.

Billy J. KEMPE, Appellee.

No. 17262.

Court of Civil Appeals of Texas.

Dallas.

April 25, 1969.

Rehearing Denied May 23, 1969.

Timothy E. Kelley, of Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

John B. Foster, of Davis & Foster, Arlington, for appellee.

BATEMAN, Justice.

This appeal is from a judgment in favor of appellee for maximum workmen's compensation benefits, and the only questions raised are as to the adequacy of the evidence to support the jury findings of total permanent incapacity.

Appellant's points 1, 4 and 9, saying that there is no evidence to support such findings, and that the converse thereof was established by the evidence as a matter of law, are overruled. As will be shown later, there was at least some proof on these matters.

However, appellant's second, third, eighth and tenth points of error assert that the findings are not supported by sufficient evidence and are against the great weight and preponderance of the evidence. We have carefully studied the entire record and conclude that these points of error must be sustained. Our summary of the evidence follows.

Appellee testified that he had been continuously employed by appellant's insured, American Airlines, Inc., for sixteen years. On November 21, 1966 he pulled a mail cart or trailer which, with its load of mail, weighed about 2,000 pounds, and experienced a sharp pain in his lower back. He

completed that day's work although the pain continued. After trying unsuccessfully to see the company doctor, he went to Dr. Polson, a chiropractor, who treated him and told him it was "just a little catch or something and it would be all right." He stayed at home the next day, and thereafter was treated by two osteopaths, one of whom, after treating him three or four times, put him in a hospital on January 13, 1967. Except for the day after the injury, appellee worked all of the time until he went to the hospital, although his fellow employees helped him because he could not do the heavy lifting. When asked why he did not just take off and let his condition get better, he replied: "By golly, I had to eat and I've got four kids to feed; I just couldn't do it."

In the hospital a myelogram indicated a rupture of a disc in the lower part of his spine, and this disc was surgically removed. He was in the hospital a total of about fifteen days, and a little over three months after leaving the hospital he returned to work for the same employer.

Shortly prior to his injury the appellee had successfully undertaken a test to determine his qualifications to be made a "lead fleet service clerk," and when he returned from the hospital he became a "lead man" and was given light duty in the office. At that time he could not have done the stooping, lifting and bending that he formerly did, and does not think he will ever be able to do so, as his back still gives him difficulty. It gets to hurting at times and when it does he has to lie down. This has occurred several times while he was at work. He said that prior to his admission to the hospital, the pain was practically unbearable; that the operation relieved some of the pain, but that he still has some numbness in his left foot and ankle. He has passed up opportunities to do overtime work because that would probably consist of unloading cargo or heavy freight, which he could not do; that his back is weak and still gives him a tremendous amount of paint at times.

He testified that at the time of trial his work consisted of "riding around or about halfway supervision" with a crew of men under him that he oversees; that they unload the airplanes and he does not have to pull these carts any more; that while he is not considered a supervisor he does direct other people; that with this new job he is making approximately 25 cents an hour more than he was making when injured.

Appellee further testified that if he lost his job at American Airlines and had to get another job, he could not do all of the tasks such as lifting and stooping and bending; he could not get out and do a hard day's work as a man of his low education would have to do in order to get a job; that he couldn't do the normal tasks of a workman; and that the overtime he has lost amounts to much more than the small increase in salary.

Appellee's wife testified that before the injury they were a very active family, going camping, hiking and boating very much; that appellee had cattle and worked with them and did his plowing, but "when he got down with his back he couldn't do this again"; that he hasn't been able to work around the home, take care of the yard, his farming needs or his cattle like he should.

Dr. T. T. McGrath, the osteopathic surgeon who removed the disc from appellee's back, described the operation in great detail, testified that there would be some permanent restriction to appellee's activities because of the loss of flexibility in his back, and that "it would be to his advantage to avoid certain stresses and strains and motions to avoid creating additional stress and strain to the adjacent or neighborhood tissues." He testified that he was familiar with the practices of corporations in hiring personnel, and that if he were examining appellee for employment he felt it would be his duty to mention the past medical and past injury and also restrictions. He said that he last saw appellee on March 20, 1967, at which time he

released him to return to regular duty for his employer, American Airlines, with restrictions as outlined to him; that when he last saw him appellee was recovering satisfactorily from the surgery, and he released him for regular work with certain restrictions; that a great many people he operates on for this very same condition do return to gainful employment and are able to do a regular day's work with the restrictions that he puts on them.

We have not found or had cited to us a reported case in which the facts were exactly like those in the case at bar, but the one most nearly like this one is Fidelity & Casualty Co. of New York v. Burrows, 404 S.W.2d 353 (Tex.Civ.App., San Antonio 1966, writ ref'd n. r. e.). As in this case, the employee there was employed by an airline to load and unload airplanes and received a low back injury. In both cases the employee returned to work for the same employer and made more money than before injury, and in both cases fellow workers assisted the injured employee by handling the heavier packages and leaving him the lighter work. In both cases the trial court gave substantially the definition of "total incapacity" approved in Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944), and in both cases the jury found total permanent incapacity. The San Antonio court reversed and remanded, holding that those findings were so against the great weight and preponderance of the evidence as to be clearly wrong, saying:

"It would be wrong to say that appellee cannot obtain and retain employment when he has been doing so since June 1, 1964."

Likewise, we hold in this case that it would be wrong to say that Kempe could not obtain and retain employment, in the face of the admitted fact that he has been doing so since March 29, 1967.

■ Of course, the mere fact that a claimant works and earns money after being injured, even more money than he earned before, is not conclusive on the issue of his capacity to work. He may, driven by the goad of economic necessity, work when not physically able to do so. These are only evidentiary factors bearing on the issue of whether he has been rendered incapable of procuring and retaining employment. They are not overriding or controlling. 63 Tex.Jur.2d, Workmen's Compensation, § 462, p. 521.

■ As said in Employers' Reinsurance Corp. v. Holland, 162 Tex. 394, 347 S.W.2d 605, 606 (1961), " * * * the purpose of the Act is to compensate an injured employee, not for the loss of earnings or for the injury itself, but for loss of earning capacity." There is evidence in this record that would support a finding of total incapacity for a short period of time, followed by some permanent partial incapacity, but we are quite convinced that the findings of total permanent incapacity are so against the weight and preponderance of the evidence as to be manifestly wrong. Our decision finds support in Texas Employers' Ins. Ass'n v. Moran, 261 S.W.2d 855 (Tex.Civ.App., Eastland 1953, writ dism'd); Texas Employers' Ins. Ass'n v. Vineyard, 316 S.W.2d 156 (Tex.Civ.App., Dallas 1958, no writ); Texas Employers' Ins. Ass'n v. Hawkins, 387 S.W.2d 469 (Tex.Civ.App., Amarillo 1965, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Norton, 278 S.W.2d 287 (Tex.Civ.App., Amarillo 1955, writ dism'd); and the quite recent case of Travelers Ins. Co. v. Smith, 435 S.W.2d 248 (Tex.Civ.App., Texarkana 1968, writ dism'd).

Appellant's fifth, sixth and seventh points of error assert a right to reversal because the finding that appellee's total incapacity began on November 21, 1966 is not supported by any evidence, that the evidence is insufficient to support the finding, and that the finding is against the great weight and preponderance of the evidence. In view of our reversal and remand of the case for another trial, we deem it improper and unnecessary to discuss these points.

Reversed and remanded.