COMMERCIAL INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Appellant,

v.

Robert PUENTE, Appellee.

No. 1032.

Court of Civil Appeals of Texas,
Corpus Christi.

April 15, 1976.

Rehearing Denied May 6, 1976.

## OPINION

NYE, Chief Justice.

This is a workman's compensation case
tried to a jury resulting in a judgment for
appellee, Robert Puente, against appellant,
Commercial Insurance Company of New-
ark, New Jersey, for total and permanent
incapacity. Appellant has duly perfected
its appeal to this Court complaining that
the evidence is legally and factually insuffi-
cient to support the jury's award.

Robert Puente, hereinafter referred to as
appellee, was a man, 26 years of age with
only an eighth grade education, with no
type of specialized training. He went to
work for the City of Corpus Christi Sanita-
tion Department in June 1968. His job
classification was that of refuse collector.
Appellee's duties required riding on the
back of a garbage truck, jumping off and
picking up trash cans, generally carrying
the cans approximately five to six feet,
lifting the cans approximately three and a
half (3½) to four (4) feet and then tossing
the refuse in the truck. Each can weighed
on the average twenty (20) pounds although
naturally some would weigh considerably
more. The job also required that appellee
do a considerable amount of running behind
the truck sometimes running two to four
miles a day. Prior to and at the time of the
accident, he was earning $2.39 per hour.

On December 21, 1972, while riding on
the back of one of the City's garbage
trucks, the platform on which appellee
stood broke, causing him to fall to the
ground and injuring his back. Appellee's
foreman was informed of the accident and
took appellee to the City physician and later
to a Dr. Hyman P. Roosth, a specialist in
the field of orthopedic surgery.

The trial was before a jury which found
among other things: that the plaintiff,
Robert Puente, received an injury on or
about December 21, 1972; that he was in-
jured in the course of his employment; that
the injury was a producing cause of total
incapacity; that such total incapacity began
December 21, 1972; that the duration of
such total incapacity was permanent; that
the injury was not a producing cause of any
partial incapacity; and that the payment of
compensation in weekly installments in-
stead of a lump sum would not result in
manifest hardship and injury to plaintiff.

The trial court rendered judgment that plaintiff recover the sum of $17,452.25 for compensation benefits. The appellant insurance company brings forward six (6) points of error, all being evidentiary points.

In its points of error No. 1 and 4, the insurance company asserts that there is no evidence to support the jury's finding to the special issues that the duration of plaintiff's total incapacity is permanent and that the injury was not a producing cause of any partial incapacity.

The appellee asserts that appellant has waived its no evidence points because appellant failed to lay the proper predicate for such points. "No evidence" points of error are inherently and fundamentally points which, if sustained, call for reversal of a trial court's judgment and a rendition of judgment for the appellant. They must, therefore, be based upon and related to one or more of the following procedural steps in the trial court: a) motion for instructed verdict; b) objection to the submission to the jury of a vital fact issue; c) motion for judgment notwithstanding the jury's verdict; and d) motion to disregard the jury's answer to a vital fact issue. All are steps which must be taken before the rendition of judgment. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960). When such an assignment is not related to and based on one or more of the four prejudgment motions or objections, but is assigned in the final motion for new trial, the appellate court may consider this point but may only reverse and remand the case for a new trial. In the case at bar, appellant failed to make any of the prejudgment motions set out above. However, it is not necessary for us to consider appellant's no evidence points, as such, in view of our subsequent holding.

Since this case involves primarily the sufficiency of the evidence of the jury's findings, we must first distinguish between "total" and "partial" incapacity. Total incapacity occurs when a workman is disabled by injury to such an extent he cannot procure and retain employment at labor of the class he was performing when injured; the term does not imply absolute physical inability to perform any kind of labor. *Texas Employers' Ins. Ass'n v. Mallard,* 143 Tex. 77, 182 S.W.2d 1000 (1944); *Travelers Insurance Company v. Smith,* 435 S.W.2d 248 (Tex.Civ.App.—Texarkana 1968, writ dism'd). Partial incapacity occurs when injury disables a workman to perform part of the usual tasks of his job, though such disablement does not prevent him from procuring and retaining employment reasonably suitable to his physical condition and ability to work, or when because of his injury he is only able to perform labor of a less remunerative class than he performed before the injury, and as a consequence he suffers a depression or reduction in his earning capacity. *Southern Underwriters v. Schoolcraft,* 138 Tex. 323, 158 S.W.2d 991 (1942, opinion adopted); *Travelers Insurance Company v. Smith,* supra.

The court properly charged the jury in giving the following definitions:

" 'TOTAL INCAPACITY' does not imply absolute inability to perform any kind of labor, but means that *one is disabled from performing the usual task of a workman, not merely the usual task of any particular trade or occupation, to such an extent that he cannot get and keep employment.*

A person cannot have both total and partial incapacity at the same time."

and

" 'PARTIAL INCAPACITY' is any degree of incapacity less than total incapacity, and means that a person's earning capacity is reduced because *he can perform only part of the usual tasks of a workman or can only do lower paying work than he could do before his injury, but can get and keep employment suitable to his condition.*" (Emphasis supplied).

Appellant also complains in its points of error No. 2 and 5 that there is insufficient evidence to support the jury's finding to the same special issues and in points No. 3 and 6 that such findings are against the great

weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

■ When it is urged that the jury's failure to find a fact is so against the great weight and preponderance of the evidence as to be wrong and unjust, the fact finding power of the Court of Civil Appeals is invoked. In such a case, we are required to weigh all of the evidence and to remand the cause for a new trial if we conclude that the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304 (1960); *Traylor v. Goulding,* 497 S.W.2d 944 (Tex. Sup.1973); *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

Considering then all of the evidence, we begin with what occurred immediately after the appellee was hurt. After the appellee was examined by Dr. Roosth, he was admitted to Spohn Hospital on the same day. He was placed on bed rest, physical therapy, pelvic traction and given muscle relaxant drugs. From appellee's symptoms, it appeared to Dr. Roosth that he had a hip strain with secondary back pains. Four days later, appellee was dismissed from the hospital.

On December 29, 1972, Dr. Roosth again examined appellee, with appellee appearing essentially well. The doctor then suggested and appellee did return to work on January 2, 1973. On January 8, 1973, appellee contacted Dr. Roosth complaining that on January 6, 1973, he had another pain in his back. Dr. Roosth still believing that the back pain was secondary to a left hip strain, treated the left hip by a treatment referred to as a partial tendonsheath release of the hip under local anesthetic. After the January 6, 1973, visit to March 12, 1973, Dr. Roosth saw appellee approximately four more times. On March 12, 1973, appellee returned complaining of the pain at which time Dr. Roosth admitted appellee to the hospital. On March 14, 1972, Dr. Roosth

performed a lumbar myelogram on the appellee.

As a result of these tests, Dr. Roosth performed an exploratory laminectomy in order to examine the disc bases at the appropriate levels and determine if there was something he could do to relieve appellee of his discomfort. During this operation, plaintiff's disc at the L 4–5 level was removed. The doctor stated that he was not very impressed with the disc protrusion or bulging in the L 4–5 area, but felt that while he was there and not being able to determine what a disc would do in a body against a nerve root when the patient is in an upright position, removed the disc. Dr. Roosth also removed the disc material from the space at L–5 S–1 on the right in order to relieve any possible compression of the root. Appellee remained in the hospital three to four weeks after the operation and was dismissed March 24, 1973.

In July 1973, appellee went back to work but was laid off due to a strike. In September 1973, appellee returned to work for the same employer. He did not return to the refuse collection, however, but was assigned light duty work which included being a flagman, truck driver, and picking up light brush. Appellee is still working for the City of Corpus Christi, assigned to lighter duty work and is presently earning $2.63 per hour, approximately twenty-five cents (25¢) more per hour than at the time of the accident.

There were four witnesses, all for the plaintiff. Considering as we must all of the evidence, we have reached the conclusion that the greater weight and preponderance of all of the evidence is against the jury's finding of total incapacity.

Appellee's supervisor, Ceferino F. Valenzuela, testified that appellee had been a steady worker doing the task of a refuse collector beginning in 1968 up until the time of the accident December 21, 1972. The usual task of a refuse collector included preparing the ice pail in the morning, going out with the crew and picking up the garbage cans and running behind the truck. Since the accident, appellee had been as-

signed to lighter duty work which included driving a truck, picking up light trash and being a flagman. He testified that appellee has done the usual task of a brush truck driver and has been able to keep that job and has not complained to him about any disability in doing the usual task of a brush truck driver, a position he now holds. Valenzuela further testified that since appellee had gotten hurt on the job, they (City of Corpus Christi) would let him stay there doing the lighter duty job. Valenzuela also stated that appellee was a satisfactory and good worker before his accident and still is.

Appellee's wife testified in effect that her husband has a partial disability. She stated that when he comes home from work, most of the time his back is aching. He complains about his back hurting during certain types of weather. She testified that he cannot bend over in front of the hood of his car to work on it, or play with the children like he used to.

The appellee testified that since the accident and his operation, although he is still able to pick up the garbage cans, he cannot do it all the time. He stated that he is unable to run like he used to. He testified that he does not feel like he can do all of the duties of a refuse collector. He further testified that he could not dig ditches; could not move furniture around the house; and cannot stand to sit all day. He also stated that he can only sweep or mop for twenty to thirty minute periods.

On the other hand, the appellee testified that he can do the lighter but not heavy duties of a refuse collector. He testified that with regard to the type of work such as truck driver, brush pickup and flagman, he is able to get that job and is able to keep it. He also stated that the brush truck driver's job is more suitable to his physical condition. Appellee stated that in regard to the question being asked him as to whether he could get a job outside the City of Corpus Christi, that he has not really tried to look for any other work. He admits that he is really pretty happy with his job and that the type of work that he is doing is suitable to his physical condition.

Finally, Dr. Hyman P. Roosth, the treating physician, testified that appellee had a complete recovery from his surgery of March 16, 1973, and that in such operation, he had removed all of appellee's pain. According to one of Dr. Roosth's reports, the doctor stated that appellee was, able to work a normal length of a work day, standing or sitting and was able to drive a truck. The doctor testified that appellee can lift fifty (50) pounds, occasionally, but not all day; that appellee can still work for the sanitation department, however, not necessarily doing the heavier labor. He also stated that it was not true that appellee is not able to do continuous bending or stooping in that he can bend if he bends his knees as the doctor taught him and can stoop if he does so bending his knees. Appellee's physician testified further that he did not intend for appellee to lift heavy weights and jump on and off trucks, or throw cans onto trucks. He said he would not recommend an occupation for appellee that involved the throwing of cans.

However, with regard to the doctor placing the appellee on light duty work, the doctor stated that the limitation on his back is on the basis of prevention, and not that he cannot perform with his back at the present time; "he can do anything anybody else can do right now, but I do not want him to do it because he may pop another disc", because of his past history. Dr. Roosth, after being given the definition of partial incapacity (as found in the charge to the jury) testified that any disability appellee has is a partial permanent disability rather than a total and permanent disability and that such partial permanent disability would have to date from September 18, 1973.

To uphold a recovery for total and permanent incapacity, the evidence must show not just that the workman is disabled, and not just that such disability be from performing the usual tasks of a workman, but the evidence must show that the workman is disabled to such an extent that he cannot get and keep employment. The tes-

timony from this trial is convincing that appellee has suffered some permanent partial incapacity and that he cannot now perform heavy lifting and running such as he was performing when he was injured. But the overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time. Therefore, after having carefully considered all the facts and circumstances of this case, we are compelled to hold that the jury's finding in Special Issue No. 3C (that Plaintiff's total incapacity is of permanent duration) was so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust. Appellant's point of error No. 3 is sustained. Therefore, the judgment must be reversed and the cause is remanded for a new trial. See *Commercial Insurance Company of Newark, New Jersey v. Kempe,* 440 S.W.2d 919 (Tex.Civ.App.—Dallas 1969, no writ); *Travelers Insurance Company v. Smith,* supra; *Texas Employers' Ins. Ass'n v. Moran,* 261 S.W.2d 855 (Tex.Civ.App.—Eastland 1953, writ dism'd); *Texas Employers' Insurance Association v. Vineyard,* 316 S.W.2d 156 (Tex.Civ.App.—Dallas 1958, no writ); *Texas Employers' Insurance Association v. Norton,* 278 S.W.2d 287 (Tex.Civ. App.—Amarillo 1955, writ dism'd); *Fidelity & Casualty Company of New York v. Burrows,* 404 S.W.2d 353 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.).

REVERSED AND REMANDED.