**LUMBERMEN'S MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Manuel VILLALPANDO, Jr., Appellee.**

No. 1615.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1980.

Rehearing Denied Sept. 25, 1980.

George G. Brin, Brin & Brin, Corpus Christi, for appellant.

R. A. Vidaurri, Flores, Sanchez, Vidaurri & Munoz, McAllen, for appellee.

## OPINION

BISSETT, Justice.

This workers' compensation case involves an appeal by Lumbermen's Mutual Casualty Company (defendant) from a judgment of the trial court awarding Manuel Villalpando, Jr., (plaintiff) $26,770.04 for total and permanent incapacity. Suit was filed on February 2, 1978. Trial was to a jury which answered special issues favorably to plaintiff. Judgment was rendered on June 29, 1979.

At the beginning of the trial, it was admitted by defendant that plaintiff had suffered some incapacity to work as the result of accidental injuries. It was also admitted plaintiff's incapacity, which began on the date of his injury, was total for at least "some" period of time.

The only issue to be resolved in this appeal is whether the evidence is factually sufficient to support the jury's answer to special issue number three, wherein it was found that plaintiff's total incapacity is permanent, and whether such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

When factual insufficiency and great weight points are raised on appeal, as defendant has done here, we are required to review, consider and weigh all the evidence and to remand the cause for a new trial if we conclude that the verdict is not supported by factually sufficient evidence, or is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n. r. e.).

Plaintiff, who graduated from high school in May, 1975, enrolled as a student at the Texas State Technical Institute in September, 1975. He studied mechanical drafting. He withdrew from the Institute in March, 1976, and went to work for Texas Plastics, Inc., located at Elsa, Texas. His work required the lifting of heavy objects. On Friday, May 6, 1976, while working in the bagging department of Texas Plastics, he suffered a back injury. He did not go to work the next day, but did go back to work the following Monday. He continued to work at the same job with Texas Plastics until August, 1976, when he left its employ to go to work for Triangle Electric, in Harlingen, Texas, as an apprentice electrician. The work at Triangle Electric paid more money than the work at Texas Plastics, but it also required a great deal of heavy, manual labor. His back continued to hurt, and he concluded that he could no longer perform the tasks assigned to him at Triangle Electric because of back pain. His supervisor advised him to get into some other type of work which "wouldn't require me using my back," because a "lot of manual labor would be required as an apprentice electrician." He left Triangle Electric in October, 1976, because, in his words, "it got to a point that it wasn't possible" to bend, stoop

and lift because of "pain in my back." After October, 1976, he looked for employment which did not require heavy, manual labor, such as lifting heavy objects, stooping or bending. He was unable to find such employment, with the exception of occasional part–time work. The record is not clear as to the duration of each of the part–time jobs. All were in the field of mechanical drafting.

In late 1977, plaintiff re–entered the Texas State Technical Institute, and resumed his studies in the field of mechanical drafting. He graduated in March 1979. He has held a draftsman's job ever since. He still experiences pain, however, and his back has never returned to a state where it does not hurt every day. He takes aspirin occasionally, although he discontinued other pain killers which had been prescribed by doctors.

Subsequent to the accident in May, 1976, plaintiff visited several doctors. The first doctor he visited was Dr. Keller, his family physician. After his second visit to Dr. Keller, he was referred to Dr. Roeder, a radiologist. He was then referred to Dr. Krishman, who saw him about five times. Dr. Krishman testified that, in his opinion, plaintiff's incapacity was temporary, and had ended by August 24, 1976, when he last examined plaintiff. According to Dr. Krishman, plaintiff told him during the last visit that his back was back to normal.

Dr. Krishman's testimony was contradicted by that of Dr. Ruben Pechero, who first examined plaintiff in October, 1976. According to Dr. Pechero, plaintiff had several pre–existing defects of the spine which were aggravated and made symptomatic by the accident. He was of the opinion that plaintiff would continue to suffer pain in his lower back, which could only be relieved temporarily. He also stated that plaintiff can only do light work and his condition of incapacity for performing heavy manual work is permanent.

Another doctor who examined plaintiff was Dr. Robert Hardy. He testified that plaintiff appeared to be normal, and that he could find no clinical reason why plaintiff cannot obtain and keep employment doing the usual tasks of a workman. This was apparently questioned by Dr. Walker, still another doctor who examined plaintiff, who testified that plaintiff would not be able to obtain a job which required heavy manual labor. He left open the possibility of plaintiff performing lighter work. Plaintiff had not seen a doctor since July, 1977.

Concerning mechanical drafting as a career, plaintiff testified that by the time he finished high school he was interested in drafting and that he wanted "at least to give it a try." He said that he left the Institute to go to work for Texas Plastics because "I was having transportation problems at the house with my family ... so I decided to work for several months or so and earn enough money to get myself a used car." He then intended to resume his drafting studies at the Institute. Plaintiff was earning about $2.45 per hour on the date of his injury. At the time of trial (June, 1979), he was earning $3.75 per hour as a draftsman. Plaintiff testified that he intended to work in the field of mechanical drafting as a life–long career.

There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered an injury that caused permanent disability. *Texas Employers' Insurance Ass'n v. Washington*, 437 S.W.2d 340 (Tex.Civ.App.–Dallas 1969, writ ref'd n. r. e.). Proof of duration of a disability resulting from injury is, like the assessment of damages in a personal injury action, at best an estimate which must be determined by a jury from all the pertinent facts before it. *Employers Reinsurance Corporation v. Jones*, 195 S.W.2d 810 (Tex. Civ.App.–Beaumont 1946 writ ref'd n. r. e.). The mere fact that a claimant has returned to work after his injury does not, in and of itself, preclude a finding of total and permanent incapacity. *Aetna Casualty & Surety Company v. Depoister*, 393 S.W.2d 822 (Tex.Civ.App.–Corpus Christi 1965, writ ref'd n. r. e.).

In order for an injured workman to recover for total incapacity, he must

prove by a preponderance of the evidence that his disability is not merely partial. *Southern Underwriters v. Boswell*, 138 Tex. 255, 158 S.W.2d 280 (1942). A finding of total incapacity excludes the converse of partial incapacity, and vice versa. *Select Ins. Co. v. Boucher*, 561 S.W.2d 474 (Tex. Sup.1978).

In *Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1001 (1944), the rule was announced:

"... An employee is not entitled to recover for total incapacity merely because he is unable to procure and retain employment in his usual occupation. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular one trade or occupation ...."

Accordingly, Texas courts have, on numerous occasions, refused to sustain jury findings of total and permanent disability in instances where the record clearly demonstrated a capacity of the claimant to get and keep employment suitable to his condition. In *Commercial Ins. Co. of Newark, New Jersey v. Puente*, 535 S.W.2d 948, 952-953 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n. r. e.), this Court, speaking through Chief Justice Nye, said:

"[T]o uphold a recovery for total and permanent incapacity, the evidence must show not just that the workman is disabled and not just that such disability be from performing the usual tasks of a workman, but the evidence must show that the workman is disabled to such an extent that he cannot get and keep employment. The testimony from this trial is convincing that appellee has suffered some permanent partial incapacity and that he cannot now perform heavy lifting and running such as he was performing when he was injured. But the overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time ..."

Also, in *Texas Employers' Insurance Ass'n v. Hawkins*, 387 S.W.2d 469, 471 (Tex.Civ. App.–Amarillo 1965, writ ref'd n. r. e.), the Court stated:

"It is apparent from Hawkins' counsel's questions directed to his witnesses and the jury argument that his contention throughout the trial was that Hawkins' total incapacity was based on his inability to perform a job requiring him to bend, stoop and lift. This contention restricts the approved definition of total incapacity. 'An employee is not entitled to recover for total incapacity merely because he is unable to procure and retain employment in his usual occupation. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular one trade or occupation....' "

Similarly, in *Texas Employers' Insurance Ass'n v. Vineyard*, 316 S.W.2d 156, 160 (Tex. Civ.App.–Dallas 1958, no writ), the Court observed:

"In the light of the above holdings by our Supreme Court [*Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, (1944) and *Southern Underwriters v. Schoolcraft*, 158 S.W.2d 991 (Tex.Com. App.1942, opinion adopted)], we cannot escape the conclusion that the jury finding of total permanent incapacity in this case was contrary to the overwhelming weight and preponderance of the evidence. The testimony is convincing that appellee Vineyard had suffered permanent partial incapacity and that he cannot now perform heavy lifting such as he was performing when he was injured. Appellant concedes as much. But the evidence shows that his condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter lifting duties than his former employemnt, which lighter duties he is able to perform full time, permanently and ably. Certainly it seems to us that the evidence is insufficient to uphold a finding of total permanent incapacity...."

See also *Fidelity & Casualty Company of New York v. Burrows*, 404 S.W.2d 353 (Tex. Civ.App.–San Antonio 1966, writ ref'd n. r. e); *Travelers Insurance Company v. Smith*, 435 S.W.2d 248 (Tex.Civ.App.–Texarkana 1968, writ dism'd); *Texas Employers' Ins. Ass'n v. Moran*, 261 S.W.2d 855 (Tex.Civ. App.–Eastland 1953, writ dism'd); *Texas Employers' Ins. Ass'n v. Ontiveros*, 570 S.W.2d 98 (Tex.Civ.App.–El Paso 1978, no writ).

In the case at bar, the claimant has obtained and retained employment, albeit at a less strenuous job than he had before his injury, and is ably performing the usual tasks of his employment on a full–time basis at a rate of pay in excess of that formerly received. Nevertheless, he has been awarded a recovery for total and permanent disability only because he cannot return to his prior, and more strenuous, job, although that job was but a detour from his original quest for the training and experience necessary to become a full–time draftsman, the job he now holds! Surely, this violates the spirit and intent of the Workers' Compensation Act, which is meant to compensate injured workers for loss of earning capacity, and no more. *Employers Reinsurance Corporation v. Holand*, 162 Tex. 394, 347 S.W.2d 605 (1961).

Viewing the case at bar in light of this purpose, we find we are faced, in effect, with a claimant who is undoubtedly saddled with partial incapacity on a permanent basis. This is, therefore, a case not at all dissimilar from *Commercial Ins. Co. of Newark, New Jersey v. Puente, supra,* in which we reversed a jury verdict of total and permanent disability. In fact, we cannot discern *any* distinguishing mark between *Puente* and the case at hand which is relevant with respect to the issue in question. In *Puente,* claimant was a 26 year old refuse collector with no type of specialized training at the time of his back injury. As a refuse collector, he was charged with various duties which could be classified as "heavy" in nature. At the time of trial he had returned to the employ of the city sanitation department but he was assigned only "light" duty work. All of this was at a higher salary than he had made prior to his injury.

The only differences between *Puente* and the case at bar are that 1) the claimant in *Puente* returned to work after his injury with the same employer and 2) the claimant in *Puente* could do the lighter, but not heavy duties of a refuse collector after his injury. The first difference is irrelevant in light of the rule of *Mallard* that one is not totally incapacitated merely because he cannot procure and retain employment doing the usual tasks of any particular trade or occupation. The second difference also is irrelevant because the proper distinction is one between lighter and heavier work, not between one type of a job and another. In both cases, we find a claimant who was disabled only from doing heavy work; both could perform lighter duties. In *Puente,* claimant chose to do his lighter work for the same employer. In the case at bar, claimant has opted for lighter work with another employer. We think the difference is trifling.

Since we cannot distinguish *Puente* from the case at bar to our satisfaction, and since the rule enunciated by the Supreme Court in *Mallard* seems tailored to the facts before us, we have no choice but to reverse the judgment of the trial court and remand the cause for a new trial.

REVERSED AND REMANDED.