Rhonda Kay THOMAS, Appellant,

v.

°SERVICE LLOYDS INSURANCE COMPANY, Appellee.

No. 3–92–464–CV.

Court of Appeals of Texas, Austin.

Aug. 11, 1993.

Rehearing Overruled Sept. 22, 1993.

Guy D. Choate, Webb, Stokes & Sparks, San Angelo, for appellant.

E. Thomas Bishop, Alex N. Beard, E. Thomas Bishop, P.C., Dallas, for appellee.

Before ABOUSSIE, JONES and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

BEA ANN SMITH, Justice.

The opinion issued by this Court on June 30, 1993, is withdrawn, and this opinion is filed in its place.

Appellant Rhonda Kay Thomas appeals a trial-court judgment rendered in favor of appellee Service Lloyds Insurance Company ("Service Lloyds") in a workers' compensation case. Although the jury found that Thomas was injured in the course and scope of her employment and that she sustained total and permanent incapacity as a result of that injury, the trial court rendered judgment *non obstante veredicto* (n.o.v.) in favor of Service Lloyds. We will reverse the trial-court judgment and remand the cause for a new trial in accordance with this opinion.

## BACKGROUND

Thomas sustained an injury to her right shoulder on September 13, 1990, when her car was rear-ended by another vehicle. At that time, Thomas was employed as a service advisor for Lynn Alexander Autoplex ("Autoplex"), an automobile dealership in San Angelo, Texas. Autoplex was covered under a workers' compensation insurance policy issued by Service Lloyds.

On the day of the accident, Thomas left Autoplex during regular working hours to take her car to a body and detail shop located nearby for a paint job.[1] Thomas had purchased her car from Autoplex, and the paint work she sought to have done was covered under her warranty. While Thomas was delivering her car to the body shop, another driver struck her from behind. Thomas suffered no broken bones nor other readily apparent injuries.

Although she missed a day of work following the accident, Thomas continued to work for the next seven weeks without any medical treatment, until she visited Dr. Vernon L. Ryan on November 2, 1990, to complain of continuing pain in her right shoulder. Dr. Ryan diagnosed Thomas as suffering from possible subacromial impingement syndrome in her right shoulder and prescribed physical therapy. Because therapy failed to remedy the problem, Thomas underwent surgery in February 1991. Approximately two months following her surgery, Thomas was released to perform light duties and returned to Auto-

---

1. The body and detail shop in question is part of a separate automobile dealership owned by Lynn Alexander. Because Autoplex has no body repair shop, the cars of Autoplex customers needing body work, including work covered by warranty, are sent to the body and detail shop.

plex as a service advisor. She had been back at work for about seven days when she was fired.[2] She subsequently filed a workers' compensation claim.

On May 1, 1992, Thomas received a job at the San Angelo State School working in the clothing room, where she continued to be employed at the time of trial. Her income at this job was approximately half of what she earned at Autoplex. At trial, Thomas claimed that despite some improvement, movement of her right shoulder remained limited. Following a jury verdict in favor of Thomas, Service Lloyds moved for judgment n.o.v. The trial court granted Service Lloyds' motion, holding that Thomas take nothing because she had provided no evidence that she had been injured in the course and scope of her employment or that she sustained total and permanent incapacity as a result of the accident.

On appeal, Thomas advances two points of error attacking the propriety of the trial court's rendition of judgment n.o.v. because some evidence exists to support the jury findings as to injury in the course and scope of employment and total and permanent incapacity. Service Lloyds brings one cross-point challenging the factual sufficiency of the evidence to support the jury finding of total and permanent incapacity.[3]

## DISCUSSION

■ In her first point of error, Thomas challenges the rendition of judgment n.o.v. on the basis that some evidence exists to support the jury finding that she was injured in the course and scope of her employment. A reviewing court may uphold a trial court's judgment n.o.v. only if a directed verdict would have been proper under the circumstances. Tex.R.Civ.P. 301; *Dodd v. Texas Farm Prods. Co.*, 576 S.W.2d 812, 815 (Tex. 1979). A party is entitled to a directed verdict when reasonable minds can draw only

one conclusion from the evidence. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). Accordingly, to sustain a judgment n.o.v. on appeal, the court must determine that no evidence exists upon which the jury could have made the findings. *State v. Biggar*, 848 S.W.2d 291, 295 (Tex.App.—Austin 1993, writ granted). In deciding a no-evidence point, all evidence must be considered in the light most favorable to the jury verdict, and "every reasonable intendment deducible from the evidence" must be indulged in favor of the verdict. *Dodd*, 576 S.W.2d at 814. Only the evidence and inferences that support the jury finding are to be considered, and all contrary evidence and inferences should be rejected. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990).

■ Because she was injured while traveling, Thomas had to overcome the "coming and going" rule that an injury incurred in the use of public streets in going to and returning from the place of employment is not a compensable injury because it was not incurred in the course of employment. *See American Gen. Ins. Co. v. Coleman*, 157 Tex. 377, 303 S.W.2d 370, 374 (1957). The rationale of the rule that a travel-related injury is noncompensable is that "in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex.1963). There are statutory exceptions to the "coming and going" rule set forth in article 8309, section 1b of the former Texas Workmen's Compensation Law:

> Sec. 1b. Transportation or travel as basis for claim for injury. Unless transportation

---

2. Thomas' supervisor testified that Thomas was fired for refusing to have a customer's transmission serviced as requested; Thomas told the customer that Autoplex would only overhaul the transmission. According to the supervisor, Thomas' actions caused Autoplex to lose the customer's large account, and this was the sole reason for her termination.

3. Rule 324(c) of the Texas Rules of Civil Procedure provides that an appellee may advance by cross-point any ground that would have vitiated the verdict when the trial court rendered judgment n.o.v. The rule also provides that an appellee's failure to advance such grounds constitutes a waiver of those grounds.

is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip.

Tex.Rev.Civ.Stat.Ann. art. 8309, § 1b (West 1967). To prevail, Thomas had to establish that her travel to the place of injury was in the course of her employment, as defined by article 8309, sections 1, 1b.[4] The jury found that it was. We must determine if there is any basis in the evidence for the jury's finding.

█ There is ample evidence in the record that Thomas' injury meets the statutory definition of an injury sustained in the course of employment set forth in section 1 to "include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Tex.Rev.Civ.Stat.Ann. art. 8309, § 1 (West 1967). Thomas, her supervisor, and the other two service advisors testified that part of a service advisor's job is to transport, upon request, a customer's car to the body shop for repairs within the dealer's warranty. Her travel from the Autoplex to the body shop was work performed in the course of Thomas' duties for her employer.

█ The closer question is whether any evidence exists to meet the more stringent scope-of-employment test for travel-related injuries set forth in article 8309, section 1b. We conclude that the evidence supports a finding that Thomas was directed, as part of her employment, to proceed from the Autoplex to the body repair shop. Her injury, then, qualifies as an exception to the general rule that travel injuries are not compensable, satisfying the first part of section 1b. Because the car that she was transporting to the body shop belonged to Thomas, Service Lloyds argues she was furthering her personal affairs in addition to furthering the business of her employer and this removes the injury from the scope of employment unless Thomas can pass section 1b's two-prong test that: (1) the trip would have been made even had there been no personal affairs to be served, and (2) the trip would not have been made had there been no business of the employer to be served.

The supreme court has held that the second part of section 1b requires "an evaluation of the personal and business purposes of a dual purpose trip in determining whether an injury to the particular employee making the particular trip occurs in the course of employment." *Janak v. Texas Employers' Ins. Ass'n*, 381 S.W.2d 176, 181 (Tex.1964). We note that Thomas' trip does not involve the usual circumstance in which an employee is performing some task for her employer while also traveling to and from work, or alternately is ministering to some personal need, such as eating lunch, while on a mission for an employer. The purpose of the travel and the direct route of the travel were both dictated by Thomas' work duties. She was at all

4. The former Texas Workmen's Compensation Law was repealed by Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(15), (18), 1989 Tex. Gen.Laws 1, 114–15. Because Thomas' injury occurred before January 1, 1991, the effective date of the 1989 repeal, the former statute applies in this case. *Id.* at § 17.18(c), 1989 Tex. Gen.Laws 1, 122. Under the new Texas Workers' Compensation Act, "course and scope of employment" is defined in Tex.Rev.Civ.Stat.Ann. art. 8308–1.03(12) (West Supp.1993).

times serving her employer, Autoplex. The personal needs that were served were the needs of Thomas, the customer, not Thomas, the employee. Because Thomas occupied the position of both employee and customer, a unique situation arises in which Thomas, the employee, must be considered a separate individual from Thomas, the customer. As a customer, Thomas could have requested any Autoplex service advisor to drive her automobile to the body shop, and that employee's travel would have been in sole furtherance of Autoplex's business. Hence, as an employee, Thomas was merely doing her job by transporting a car under warranty to the body shop. Thomas would have made the trip regardless of the identity of the customer. This satisfies the first prong of the test. There is evidence in the record that cars were transported to this particular body shop because Autoplex had no facility to perform warranty work on the premises, and that the repairs to Thomas' car were covered by the dealer's warranty. The evidence supports a finding that Thomas, the employee, would not have made a trip from Autoplex to this particular body shop if it had not been in furtherance of the dealer's business, a finding that satisfies the second prong of the statutory test.

■ In *Janak*, the supreme court cited with approval Judge Cardozo's formulation of the test to be applied in evaluating dual purpose trips:

> The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has [had] no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

*Janak*, 381 S.W.2d at 180 (quoting *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E.

181, 183 (N.Y.1929) (citations omitted)). Thomas' work as a service advisor created the necessity for her travel; there would have been no journey had she not been carrying out her duties to her employer. Judged by this test, which we perceive to be merely a more articulate statement of the statutory requirements, there is some evidence to support the finding that Thomas was in the course of her employment at the time of her accident. That being so, it was error for the court to disregard the jury's finding and enter judgment n.o.v. We sustain Thomas' first point of error.[5]

■ By her second point of error, Thomas argues that the trial court erroneously rendered judgment n.o.v. because some evidence exists to support the jury finding of total and permanent incapacity. Total and permanent incapacity means that an injured person is disqualified from performing the usual tasks of a worker in such a way as to procure and retain employment. *Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1002 (1944). An employee is not entitled to recover for total incapacity merely because she is unable to procure and retain employment in her usual occupation. *Id.* The term implies a disability to perform the usual tasks of a worker, not an absolute inability to perform any type of labor. *Texas Employers' Ins. Ass'n v. Williams*, 662 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1983, no writ). The fact that the claimant returns to work after the injury does not, in and of itself, preclude a jury finding of total and permanent incapacity, although it should be considered in making a disability determination. *Texas Employers' Ins. Ass'n v. Ramirez*, 770 S.W.2d 896, 901 (Tex.App.—Corpus Christi 1989, writ denied). That a worker earns money by performing lighter duties after the injury does not preclude a jury from finding that the injury was total and of permanent duration. *Home Ins. Co. v. Banda*, 736 S.W.2d 812, 815 (Tex.App.—San Antonio 1987, writ denied). Also, no fixed standard exists by which a workers' compensation claimant must prove

---

**5.** Since Service Lloyds failed to bring a cross-point attacking the jury finding that Thomas was in the course and scope of her employment at the time of the accident, it has waived any complaint that there was factually insufficient evidence to support such a finding. *See* Tex.R.Civ.P. 324(c).

permanent incapacity. A disability's duration is at best an estimate that the jury makes based on consideration of all the pertinent facts. *Lumbermen's Mut. Casualty Co. v. Villalpando*, 605 S.W.2d 705, 707 (Tex.Civ. App.—Corpus Christi 1980, no writ).

 Thomas testified that before her accident she often wrote customer tickets for repairs, placed license plates on customers' automobiles, and lifted automobile hoods to replace batteries or check codes. Record testimony reflects that, after the accident, Thomas could not perform all of her normal work duties. In addition, her supervisor stated that she appeared to be in continuous pain.

Moreover, the evidence reasonably suggests that Thomas' shoulder was not healing properly. After her accident and several weeks of unsuccessful therapy, Thomas required shoulder surgery. Following the operation, Dr. Ryan noted in his medical records, dated March 29, 1991, that Thomas' pain and her lack of mobility persisted to some degree; he, therefore, recommended further rehabilitation. Thomas testified that in April Dr. Ryan told her that her range of movement in her shoulder would never be the same. She also mentioned her conversation with the unemployment office, in which she told the representative that she would not be able to do the work she had done previously. Although Thomas has obtained other employment, she testified that she continues to have difficulty lifting objects over her head due to her injury, and that this difficulty has limited her normal activities. From our review of the record, we conclude that there was more than a scintilla of evidence to support the jury finding of total and permanent incapacity. Therefore, we sustain Thomas' second point of error.

 We now turn to Service Lloyds' cross-point, which challenges the factual sufficiency of the evidence to support the finding of total and permanent incapacity. When reviewing a factual-sufficiency point, we must consider all the evidence, including that contrary to the finding of total and permanent incapacity, and should set aside the judgment only if there is insufficient evidence in the record to support the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986).

 Dr. Ryan's last entry in Thomas' medical records, made about six months after her surgery, contradicts a finding of total and permanent incapacity. In that entry, Dr. Ryan noted that Thomas had a fairly good range of movement in her shoulder and that, despite some disability, she could resume her normal activities. About the same time, he released Thomas to return to work performing lighter duties. Dr. Ryan made the entry in Thomas' records about three months after the date when he allegedly made contrary statements to Thomas.[6] The evidence suggests that Dr. Ryan had reconsidered the earlier prognosis he allegedly gave Thomas in April. The record is bereft of any expert testimony supporting Thomas' contention that she suffers total and permanent incapacity.

Furthermore, Thomas' supervisor testified that Thomas was fully able to perform a service advisor's duties and that her termination resulted solely from an altercation she had with an Autoplex client.[7] Also, although Thomas never admitted that she could do the same job, she sought similar employment with other automobile dealerships following her termination. After failing to find such employment, Thomas found work at the San Angelo State School. Although her new position paid less money and was apparently less physically demanding, insufficient evidence exists to establish that her employment outside of the automobile service industry was due to her shoulder injury. Rather, the evidence shows that her inability to procure employment as a service advisor is attributable to a dearth of such positions at other dealerships.

---

6. Dr. Ryan's medical record stating that Thomas had a fairly good range of motion in her shoulder was dated July 11, 1991. As discussed above, Thomas testified that Dr. Ryan had indicated to her on April 16, 1991, that she would never have the range of motion in her right shoulder that she possessed before the injury.

7. *See supra* note 3.

■ Finally, Service Lloyds points out that Thomas testified that she was not totally disabled. Although this appears to be an admission, Texas generally follows the rule that a party's testimony must be regarded as evidence, not as an admission. *United States Fidelity & Guar. Co. v. Carr*, 242 S.W.2d 224, 228 (Tex.Civ.App.—San Antonio 1951, writ ref'd). For Thomas' statement to be considered a judicial admission, Service Lloyds must show that her statement (1) was made during the course of a judicial proceeding; (2) was contrary to an essential fact or defense asserted by Thomas; (3) was deliberate, clear, and unequivocal; (4) if given conclusive effect, was consistent with public policy on which the rule is based; and (5) was not destructive of her theory of recovery. *See Catherman v. First State Bank*, 796 S.W.2d 299, 302 (Tex.App.—Austin 1990, no writ). Because Thomas' statement does not meet all these requirements, it cannot constitute an admission. First, the surrounding testimony, in which she discussed her capacity to retain employment, indicates that she did not know the legal definition of total incapacity. Her opinion as to the scope of her impairment corresponds to the popular meaning and conception of "total incapacity," rather than to the legal definition of that term. Hence, we cannot consider Thomas' statement of her lay opinion deliberate, clear, and unequivocal. Moreover, taking Thomas' statement as an admission would be destructive of her theory of recovery for total and permanent incapacity. Because her statement cannot be regarded as an admission, it simply constitutes additional evidence contrary to the jury finding of total and permanent incapacity.

In light of this and the other evidence that Thomas can perform the same work duties that she could before her injury, and given the lack of proof that she cannot, because of her injury, procure and retain employment doing the usual tasks of a worker, we conclude that the evidence is factually insufficient to support the jury finding of total and permanent incapacity. Therefore, we sustain Service Lloyds' cross-point.

## CONCLUSION

Based on the foregoing, we reverse the trial court's judgment n.o.v. and remand the cause for a new trial in accordance with this opinion.