TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Joe M. ONTIVEROS, Appellee.

No. 6687.

Court of Civil Appeals of Texas, El Paso.

July 19, 1978.

Rehearing Denied Aug. 16, 1978.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Ray Stoker, Jr., Odessa, for appellant.

Richard C. Abalos, Warren Burnett Associated, Richard J. Clarkson, Odessa, for appellee.

## OPINION

WARD, Justice.

This workman's compensation case was tried to a jury and resulted in a judgment for the claimant for total and permanent incapacity. Carrier complains on appeal that the evidence is factually insufficient to support the finding that the total incapacity was permanent. We reverse and remand.

▐ In evaluating the appellate complaint, we are required to examine all of the evidence to determine if it supports the jury verdict. In this case, this is relatively simple as the material facts are hardly in dispute. The claimant, Joe M. Ontiveros, was 47 years of age at the time of the accident, had an eighth grade education, and had been a laborer all of his working life with a good work record. He was employed as a truck driver hauling mud for Baroid Division, National Lead Industries, and had held the job for some six months. It was hard, heavy work and his average weekly wage was $175.00. On May 28, 1975, while in Andrews County, he was injured while carrying a sack of mud which weighed about 100 pounds. He slipped and fell to his knees and felt a funny burning sensation in his back. He continued to work that day carrying sacks, after which he drove to his home in Fort Stockton, arriving there around 10:30 or 11:00 p. m. He told his wife about the accident and she applied Ben-Gay to his back. The next morning he was in such pain that his wife had to help him dress and had to put on his shoes. He went to work that day through economic necessity. On the job, he was sent to Odessa and helped unload sacks of mud out of a boxcar. That night he returned home complaining of pain. The next morning he felt sick and he saw Dr. Jones in Fort Stockton who took an x-ray, gave him a shot, prescribed pain pills, and advised him to get bed rest and apply heat to his back. When he took the pills, the pain was eased for about four hours. His supervisor went to see him at his home on June 1st and told him he could come back to work and that he could "piddle around" the Company yard in Fort Stockton doing light duty so as not to lose any time. He returned to Dr. Jones on June 3rd and was advised that he could return to light work. He continued in his employment with Baroid doing light yard work as a dispatcher until September, 1975, when he quit his job. The reason that he quit was disputed. Ontiveros stated that he quit because his supervisor asked him to see if he could find a job involving lighter work. His supervisor, however, stated that he quit of his own accord as he wanted to return to an old job as a cement finisher and carpenter.

On September 22nd, because of the continued pain in his back, he returned to Dr. Jones, who in turn referred him to Dr. Zeeke, a bone specialist in Odessa. Dr.

Zeeke prescribed a back brace for him and the Plaintiff has worn the brace since the accident. He then went to work for Bobbit Oil Company as a filling station manager and operator and stayed there for about six months. During that period of time, he worked the front of the service station, but he could not fix flats. He quit his job with Bobbit, not because of his back, but because one of his legs swelled up and the bottom of his feet felt hot. He then went to see Dr. Pate in Alpine on March 23, 1976, and there he received an injection and a prescription for further medication. He returned on March 26th and received some instructions concerning how to get up, how to sit down, and how to sleep. Dr. Pate referred him to Dr. Greentree in Marfa, a chiropractor, and he received some 12 treatments, the last one being on August 11, 1976. Dr. Greentree treated him for his back with different machines, vibrators and massages. After the treatments, he would feel a lot better. In March, 1977, he went to work for Burrows Trucking Company as a truck driver on a water truck hauling water to various drilling operations and was still employed by Burrows at the time of the trial in April, 1977. He has missed no days at Burrows since going to work for that company, was being paid $3.75 an hour, and was working 60 to 70 hours a week, being paid time and a half for overtime. He took off work to attend the trial and expected to return to work immediately following the trial. He still wears his back brace, continues to have pain in his back, has difficulty in lifting objects but can lift objects up to 35 pounds. He stated that he was not able to work but has had to do it for economic necessity. He still experiences trouble bending, stooping, and riding in a car, but has been able to support himself and his family since September, 1975, by working. He stated that he felt that his physical condition had improved during the six months immediately before the date of trial.

His wife testified that he was in a lot of pain on the date of the accident, he has pain from walking or sitting in a position too long, and is not able to sleep comfortably at night; that he has worn the back brace since June of 1975 and he wears it all day everyday; that he sleeps on a bed with a board under the mattress; that the family does not travel, fish or play golf because the husband is always in pain; and that he is not the same man he was before May of 1975.

The only medical evidence introduced was the surgeon's final report and bill from Dr. Jones, and it indicated that the Plaintiff was able to resume work as of June 4, 1975, that he was capable of doing the same work as before the injury, and that there would be no permanent disability.

As previously indicated, the jury found that the duration of the Plaintiff's total disability would be permanent, the term "permanent disability" being defined to the effect that it does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment. The term "permanent" was defined as "a condition, if any, which will remain throughout the lifetime of the Plaintiff."

We are again called on to announce that we recognize the well established rules that permanent disability may reasonably be inferred from circumstantial evidence produced by lay witnesses, and this is true even though such evidence is contradicted by the testimony of medical experts. Further, that there is no fixed rule of evidence by which a claimant in a workman's compensation case is required to establish the fact that he has suffered an injury that caused permanent disability, it being recognized that proof of duration and extent of a disability resulting from injury is, like the assessment of damages in a personal injury action, at best an estimate which must be determined by a jury from all the pertinent facts before it. And, finally, the fact that an employee continues to work after he is injured is not controlling on the question of total and permanent disability, but this is simply one fact to be considered by the jury along with other

facts and circumstances introduced in evidence. *Texas Employers Insurance Association v. Thomas,* 517 S.W.2d 832 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.); *Hartford Accident & Indemnity Company v. Williams,* 516 S.W.2d 425 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.); *Texas Employers' Insurance Association v. Stephenson,* 496 S.W.2d 184 at 188 (Tex.Civ.App.—Amarillo 1973, no writ).

■ Granted those rules are of importance, we feel rules of equal force are not only to be cited but actually control the disposition of this case. As stated in *Montoya v. American Employers Insurance Company,* 426 S.W.2d 661 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.):

> " * * * But the fact remains that there must be some pertinent facts bearing on an incapacity to work which will last throughout the life of the claimant. Otherwise, the situation becomes one of placing too great a burden and too much responsibility on the court or jury, and leaves the outcome entirely too vulnerable to speculation, as found by this court in *Travelers Insurance Co. v. Linder,* Tex.Civ.App., 368 S.W.2d 797, n. r. e. * * "

The same thought was expressed in *Texas Employers' Insurance Association v. Hawkins,* 387 S.W.2d 469 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.), where the claimant returned to work some ten weeks after an injury and worked continuously for a period of three years prior to trial. It was stated:

> " * * * The evidence is clear Hawkins' condition did not, in the three years between the injury and second trial, prevent him from procuring and retaining regular, well-paying employment in the same field he was engaged in prior to the injury. In our opinion his work record is not one of a person totally incapacitated. He had a continuing earning capacity. We are convinced the jury finding of total and permanent incapacity was against the great weight and preponderance of the evidence. * * * "

To the same effect, see *Travelers Insurance Co. v. DeLeon,* 456 S.W.2d 544 (Tex.Civ.

App.—Amarillo 1970, writ ref'd n. r. e.); *Texas Employers' Insurance Association v. McClellan,* 490 S.W.2d 946 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); *Indemnity Insurance Company of North America v. Cady,* 356 S.W.2d 323 (Tex.Civ.App.—San Antonio 1962, no writ). These cases point out that they are not based on the lack of medical evidence, nor are they based on the failure of either the claimant or his wife to testify that the injuries were permanent, for as lay witnesses they cannot testify to that opinion. In the main, those cases are based on the continuous work record of the claimant and that is the factor that is of most importance in the present case. We parallel what was stated in *Commercial Insurance Company of Newark, New Jersey v. Puente,* 535 S.W.2d 948 at 953 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.). The most that the claimant has shown is that he has suffered some permanent partial incapacity and that he cannot now perform heavy lifting such as he was performing when he was injured. But the overwhelming evidence from this record shows that his condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties, which duties he is able to perform more than full time. The carrier's insufficient point is sustained. The judgment of the trial Court is reversed and the cause is remanded for a new trial.