TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Kenneth Lee TERRY, Appellee.

No. 08–82–00146–CV.

Court of Appeals of Texas, El Paso.

July 27, 1983.

Barry N. Beck, Julia E. Vaughn, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellant.

Norma Venso, Warren Burnett, Inc., Odessa, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

OPINION

WARD, Justice.

In this workers' compensation case, the jury determined that Kenneth Lee Terry

had sustained total and permanent incapacity. Judgment was entered accordingly, and the carrier appeals on the principal complaint that the evidence was factually insufficient to sustain the findings. We reverse and remand.

Kenneth Lee Terry, age eighteen, was engaged as a bricklayer's helper, and on September 28, 1976, he fell through scaffolding and dislocated his right shoulder. After the accident, he was taken to Reeves County Memorial Hospital, x-rayed and treated by his family physician and released. Approximately three months later, he was referred to Dr. Payne in Odessa who recommended exercise and time. He was then referred to Bill Madden, a physical therapist, but could not do the recommended exercise. In June, 1977, he began working again as a cook at the Holiday Inn since he could not do heavy lifting with his arm. He found he could do the work by keeping things close to him, as he couldn't reach out with his arm. He worked until July, 1978, when he was operated on by Dr. Palafox in El Paso for what the doctor described as a chronic dislocation of the right shoulder with a loose body particle. He remained in the hospital for eight days and was discharged by the doctor as being in good condition. He testified that as to the shoulder dislocation that the operation helped it a lot but that his shoulder was more painful than before the surgery.

After two months recuperation, he returned in September, 1978, to his work as a cook and remained until he had accumulated two years total service with Holiday Inns. In the summer of 1979, he went to work for a month on a pipeline job because he could make more money. He quit that job after one month because he found it was not going to be steady employment. Thereafter, he worked in Fort Stockton for Garrison Welders as a welder's helper, where he stayed for approximately nine months, and then went directly from Garrison Welders to his current employment with Duval Corporation, for which he had applied while still employed at Holiday Inn. He has worked with Duval Corporation on a continuous and full time basis from the time he was hired in the summer of 1980 until the time of trial in February, 1982.

Prior to working for Duval, a pre-employment medical examination was conducted. He reported his shoulder injury to the doctor and the physician put the shoulder through a range of motions, noting that the shoulder repair was satisfactory and he determined that Mr. Terry was acceptable for heavy work. Despite the problems that he had, he passed the physical. Since the time of his employment with Duval Corporation he has held three different positions, all of which required heavy manual labor. The first position was as a utility roustabout, which he performed satisfactorily. After five months, he was promoted to floorhand on a drilling rig. The job of floorhand was a very physically demanding job requiring him to constantly handle heavy drilling pipe. After a few months as floorhand on the rig, he submitted his bid for a less strenuous job working on the relays. He was soon awarded this position on the relays with the title of "Operator B," and he has continued satisfactorily on this job since the late summer of 1981 until the trial date of February, 1982. He has not required any medical attention for the three and one-half years prior to trial.

In the various positions which he has held since his injury, his wage rate has increased from $2.75 per hour to $9.70 per hour. He has worked regular forty hour weeks.

As to his ability to perform his job, Terry testified that when he went to the drilling rigs that he was in pain, could not climb and he couldn't lift his arm above his shoulder. He couldn't use his right arm when he was leading pipe into the hole, and he knew that he couldn't continue doing the work on the rigs and so made a bid for the relays, which he succeeded in obtaining. It is easier being an "Operator B" on the relays than being a floorhand on a rig, as he is working with valves, but he still has trouble reaching out, turning a stubborn valve or climbing a ladder and reports that one time after he went to work for Duval his shoulder slipped out of joint when he was sleeping.

Although he has had no medical attention for three and one-half years, the pain continues in his shoulder and has gotten no better over the past three years. He further testified that he had been active in all athletics, but that he could no longer throw the football or play basketball, as he cannot rebound, although he does coach others in basketball.

Here, the claimant has obtained and retained employment probably at a less strenuous job than he had before the injury and he is able to perform the usual tasks of his employment on a full time basis at a rate of pay in excess of that formerly received, and yet he has been awarded a recovery for total and permanent disability. This was done under a court's charge which presented the jury with no other alternative such as a possible finding of partial disability. We quote from the plaintiff's brief as dictating our decision.

> Here a worker's "steady work record", "continuous work record", or "permanent and lucrative employment calling for lighter duties, which duties he is able to perform more than full time" ensure that a jury's verdict of total and permanent incapacity will be thrown out. *Liberty Mut. Fire Ins. Co. v. Lynch,* 624 S.W.2d 798 [698], 701 (Tex.Civ.App.—El Paso 1981, no writ); *Liberty Mut. Fire Ins. Co. v. Applewhite,* 612 S.W.2d 281, 282 (Tex. Civ.App.—El Paso 1981, writ ref'd n.r.e.); *Texas Emp. Ins. Assn. v. Flores,* 603 S.W.2d [330] 331, 333 (Tex.Civ.App.—El Paso 1980, no writ); *Texas Emp. Ins. Assn. v. Ontiveros,* 570 S.W.2d 98 (Tex. Civ.App.—El Paso 1978, no writ).

In addition to the cases pointed out by the plaintiff, we quote from *Commercial Insurance Company of Newark, New Jersey v. Puente,* 535 S.W.2d 948, 952 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.).

> To uphold a recovery for total and permanent incapacity, the evidence must show not just that the workman is disabled, and not just that such disability be from performing the usual tasks of a workman, but the evidence must show that the workman is disabled to such an extent that he cannot get and keep employment. The testimony from this trial is convincing that appellee has suffered some permanent partial incapacity and that he cannot now perform heavy lifting and running such as he was performing when he was injured. But the overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time.

After viewing all of the proof in this case, it is so overwhelming against the findings that it is the Court's duty to order a new trial. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Because the matters complained about in the carrier's two other points will undoubtedly not occur again, we dispense with the necessity of discussing them.

The judgment is reversed and the cause remanded for another trial.