**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Appellant,**

v.

**Eddie SOTO, Appellee.**

**No. 08–91–00057–CV.**

Court of Appeals of Texas, El Paso.

Nov. 6, 1991.

Rehearing Overruled Nov. 27, 1991.

**620**

Timothy L. White, David R. Pierce, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Susan Larsen, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In the trial of a workers' compensation case, the jury found total and permanent incapacity. In this appeal from the judgment rendered on the verdict, the compensation carrier claims insufficient evidence to support the verdict and improper jury argument as grounds for reversal. We reverse and remand.

■■■■ In its first point of error, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Appellant, asserts factually insufficient evidence to support the jury's finding of total and permanent incapacity. When a factual sufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Eddie Soto (Soto), Appellee, was injured while employed as a "caller" at Sam's Wholesale Club in El Paso on May 10, 1987. Although he was scheduled to work as a cashier that day, he had switched jobs with another employee who was not feeling well. While transferring a case of Coke from one cart to another, he felt a burning sensation in his groin. This turned out to be a hernia which was corrected by operation in August 1987. He continued to have medical problems which were subsequently diagnosed by a urologist, Dr. Harvey Herberman, to be a combination of prostatitis, epididymitis and hyperflexic neurogenic

bladder, which he concluded were in reasonable probability caused by a sudden strain while lifting a heavy object.

For a better understanding of Soto's position following the injury, it is necessary to relate some of his prior employment history. He had enlisted in the U.S. Army in 1978. He received a medical discharge from the Army in August 1984 as a result of a knee injury for which he was given a 30 percent disability rating. After a short period of unemployment, he went to work as an assistant manager of a mobile home park in El Paso. After a few months, he quit to take a job as a repairman for a mobile home dealer. Apparently that job did not last long; he quit because his paychecks started bouncing. He was then unemployed until January 1986 when he began a course in optometric technology at El Paso Community College under a disabled veteran program. As a part of a work/study program, he started working part-time as a file clerk with the Veterans Administration Clinic in November 1986 at $3.35 per hour. In March or April of 1987, he left the V.A. job and went to work part-time as a cashier at Sam's Wholesale at $5.70 per hour. In this job, he was required to work as a "caller" on alternate days. A "caller" transfers items from a customer's basket to another basket, calling out the codes of the items to the cashier. The job entails a lot of stooping, bending and lifting, some items weighing more than 25 pounds. The cashier is required to stand for long periods at a time. Prior to the injury, Soto was looking for work elsewhere that did not involve as heavy labor as Sam's.

Following the injury, Soto began and continued to receive weekly compensation until July 20, 1989, when Dr. Herberman released him to return to Sam's as a cashier. Previously in January 1988, Dr. Herberman had given Soto a permanent disability rating to the body as a whole of 15 percent due to his prostatitis and epididymitis and 20 percent due to his neurogenic bladder. Dr. Howard Lee, a neurosurgeon, had in March 1988 rated Soto's back injury at a permanent 20 to 25 percent disability to the body as a whole. Prior to release by

Dr. Herberman, Soto had gone back to work in January 1989 as a file clerk at the Veterans Administration Outpatient Clinic. In his application and interview for the V.A. job, Soto stated that he felt fine, "excellent," and was physically able to perform activities that involved sitting and standing for long periods of time. After commencing the job, he made no complaints to his supervisor for two weeks until he complained of pain in his abdominal area which was diagnosed as a second hernia and resulted in another repair operation. After a forty-five day period of recuperation, he returned to duty where he remained a month or so until the job was discontinued in June 1989. His supervisor, Fred Rede, stated that Soto was a good employee who he would "hire back in a minute." Soto made no complaints about his knee, the hernias or other physical condition. He would have continued working for the V.A. if the job was still available. Rede was skeptical about the suggestion that Soto made frequent trips to the toilet, stating that he would have been told if Soto had been taking more breaks than usual.

He remained unemployed for several months and then on October 23, 1989, he applied for and got a job as a clerk/typist at White Sands Missile Range at $6.43 per hour. In his application, he noted only two physical limitations: He was not physically able to stand for long periods of time and that frequent walking or climbing of stairs caused him problems, both due to instability of his right knee. He was still working at this job at the time of trial in October 1990, and was then being paid $6.98 per hour. He testified that he liked the job and planned to stay. Soto testified that he could no longer do the heavy lifting and standing required of a cashier/caller at Sam's, that the most he could lift was 25 pounds. He also testified that he gets preferential treatment as a disabled veteran when applying for government jobs.

In support of his claim of total and permanent incapacity, Soto testified at length of his continued frequency of urination, the swelling and tenderness of his testicles, the pain in his prostate when he defecates and

the flareups in those conditions which would make it difficult or impossible for him to carry out his duties as a cashier or caller. He and his wife both testified that the injury had left him partially impotent and prevented him taking part in sports and other activities. After leaving the V.A. file clerk job in June 1989, he unsuccessfully applied for work at the post office as a mail machine sorter. He then got the job at White Sands. Soto did not, through his own testimony or other witness, relate that his physical condition and "flareups" affected his job performance at White Sands. As far as his condition at the time of trial, Soto was asked on direct examination whether he was getting better, worse or staying the same, to which he replied: "I'm pretty much the same—or except for that nerve section where he [the doctor] helped the pain, but like I said earlier, my tolerance as far as flareups goes, [sic] it seems to get worse. But I would like to think I'm doing better than I have been in the past."

To summarize, the evidence shows that following his injury and convalescence, Soto was able to obtain and retain employment over a considerable period of time. While his reemployment for several months by the Veterans Administration may not count much as evidence in that regard because the job was eliminated, his supervisor indicated that Soto's performance was more than satisfactory for the short period he actually worked there. Until he experienced the second hernia, he felt good. After leaving the V.A. job, he was released by Dr. Herberman to return to work as a cashier at Sam's. There is no evidence that Soto went to Sam's seeking to return to work with lighter duties either as a cashier or in some other capacity. Instead, after a period of unemployment, he obtained work at White Sands Missile Range where he was still working at the time of trial and at a higher wage than he had been getting at Sam's. Here too, his duties were less strenuous than his job at Sam's. There was no evidence that his work was substandard or that he was given special treatment as far as his duties were concerned.

His testimony was that he likes the work and planned to stay.

■ The jury was properly instructed in the court's charge:

"Total incapacity" does not imply absolute inability to perform any kind of labor, but means that a person is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment.

In *Commercial Insurance Company of Newark, New Jersey v. Puente*, 535 S.W.2d 948 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd, n.r.e.), the court in its discussion of the meaning of total and permanent incapacity, said at page 952:

To uphold a recovery for total and permanent incapacity, the evidence must show not just that the workman is disabled, and not just that such disability be from performing the usual tasks of a workman, but the evidence must show that the workman is disabled to such an extent that he cannot get and keep employment. The testimony from this trial is convincing that appellee has suffered some permanent partial incapacity and that he cannot now perform heavy lifting and running such as he was performing when he was injured. But the overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time.

The meaning of "total and permanent incapacity" given by the Corpus Christi court has been supported and followed by a long line of cases decided by this Court. *Texas Employers' Insurance Association v. Ontiveros*, 570 S.W.2d 98 (Tex.Civ.App.—El Paso 1978, no writ); *Texas Employers' Insurance Association v. Flores*, 603 S.W.2d 330 (Tex.Civ.App.—El Paso 1980, no writ); *Liberty Mutual Fire Insurance Company v. Applewhite*, 612 S.W.2d 281 (Tex.Civ. App.—El Paso 1981, writ ref'd n.r.e.); *Liberty Mutual Fire Insurance Company v.*

*Lynch,* 624 S.W.2d 698 (Tex.App.—El Paso 1981, no writ); *Texas Employers' Insurance Association v. Terry,* 656 S.W.2d 233 (Tex.App.—El Paso 1983, no writ).

This Court has not followed an earlier line of authority, expressed in *Traders & General Ins. Co. v. Collins,* 179 S.W.2d 525, 529 (Tex.Civ.App.—Galveston 1944, writ ref'd w.o.m.), that held that a person's disability is total "when he can no longer 'secure and hold employment for physical labor' such as he had to do to make a living prior to his injury." Under that reasoning, a person would be totally and permanently incapacitated whenever a partial disability permanently prevented him.from doing exactly the same work he had been doing at the time of injury. It would make the phrase "not merely the usual tasks of any particular trade or occupation," as used in the charge, meaningless.

That Soto took advantage of the preferential hiring of disabled veterans in obtaining jobs at the Veterans Administration and White Sands Missile Range does not mitigate the fact that he was able to get employment. In *Applewhite,* 612 S.W.2d 281, the injured plaintiff, a machinist, not only obtained work as a machinist through his father's efforts but worked with lighter duties under his father's supervision. With respect to Soto's ability to retain employment, the only evidence is that he had worked for twelve months at his present job, liked the work and wanted to stay on. Although he testified that he could no longer lift heavy objects, there was no suggestion that he was required to do so or that his performance was less than satisfactory. There was no testimony to the effect that Soto had lost time or was even on occasion unable to perform his duties at White Sands because of flareups of his physical disabilities.

Although the evidence, both medical and otherwise, shows and would support a finding that Soto suffered a partial incapacity which necessitated lighter duties, the overwhelming weight of the evidence is against the jury finding of total and permanent incapacity. While the evidence tended to show that Soto was physically unable to perform some of the strenuous jobs he had

held in the past, there was little or no evidence that he was unable to perform the duties of a workman in his present job. We therefore conclude that there is insufficient evidence to support that finding and sustain Point of Error No. One.

In its second, third and fourth points of error, Appellant complains that Soto's counsel engaged in improper jury argument by making personal attacks on the defendant, its witnesses and its counsel, by interrupting and objecting to defense counsel's objections, and by making an appeal to regional bias and a bias against a big company. The Supreme Court of Texas has set forth a number of factors which should be considered when an appellate court is confronted with an improper jury argument question:

In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. [Citations omitted].

*Standard Fire Insurance Company v. Reese,* 584 S.W.2d 835, 839 (Tex.1979).

 Since by the sustaining of a factual insufficiency point, the judgment of the trial court is to be reversed and the cause remanded for new trial, no good purpose would be served by analyzing each of the claimed improper jury arguments within the *Reese* requirements. Suffice it to say that at least some of the arguments made by Soto's counsel were improper. However, we do not find that any of the cited improper arguments represented instances of incurable harm. In some instances, Appellant failed to make proper objections and to request curative instructions, thus waiving the errors. Control over counsel during closing argument is within the sound discretion of the trial court and will not be disturbed without a clear showing of abuse of that discretion. *Mandril v. Kasishke,* 620 S.W.2d 238, 247 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). Counsel are admonished to keep their arguments within the parameters of Tex.R.Civ.P. 269, avoiding personal criticism of opposing counsel and refraining from side-bar remarks and interrupting opposing counsel when making a motion or objection. Points of Error Nos. Two, Three and Four are overruled.

Judgment is reversed and the cause remanded to the trial court for new trial.