**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

**Crystal D. DUKE, Appellee.**

**No. 6–91–105–CV.**

Court of Appeals of Texas,
Texarkana.

Feb. 25, 1992.

Rehearings Denied March 24, 1992.

James Corley Henderson, Henderson, Bryant & Wolfe, Sherman, for appellant.

David C. Turner, Bonham, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Maryland Casualty's appeal in this workers' compensation case questions the legal and factual sufficiency of the evidence supporting the jury's findings that Crystal Duke was totally and permanently disabled on April 1, 1989. Maryland also contends that the award improperly included benefits beyond 401 weeks from the date of her injury. We find that the evidence is sufficient to support the award, but agree that the award covered an improper interval.

Duke slipped and fell while working part-time as a waitress at the Pizza Hut in Bonham. She was treated briefly at a hospital emergency room and returned to work three days later. She has worked almost continuously since the accident for various employers. Her jobs ranged from waitressing and retail sales to secretarial and newspaper work.

Although Duke's work was not affected by the accident at first, she eventually developed headaches and a "pinch" in her tailbone. She began experiencing nausea, blackouts, and vomiting. In December 1989, she went to see a chiropractor, Dr. Clem Martin, who diagnosed a neck injury and attributed it to trauma. X-rays were taken, but no other tests have been performed. Dr. Martin restricted Duke from work for one month in 1990, but never assigned her a disability rating. Duke was released from treatment in July 1990.

Only Duke and Dr. Martin testified at trial. Maryland called no witnesses. A motion for instructed verdict was overruled, as were motions for judgment *non obstante veredicto* and for new trial.

■■■ Maryland first challenges the legal and factual sufficiency of the evidence supporting the jury's findings that Duke became totally and permanently disabled on April 1, 1989. In reviewing legal sufficiency points, we must consider only the evidence and reasonable inferences supporting the findings, disregarding all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is some probative evidence more than a scintilla supporting the jury's findings, the legal insufficiency point must be overruled. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■■■ Factual insufficiency points require that we consider all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *In re King's Estate,* 244 S.W.2d at 662. Unless the evidence, as a whole, is clearly insufficient and wrong, the point must be overruled. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). If the verdict is supported by sufficient evidence, we may not substitute our judgment for that of the jury, even if we would have found otherwise if we had been the trier of fact. *Cropper v. Caterpillar*

*Tractor Co.,* 754 S.W.2d 646, 651–52 (Tex. 1988); *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *In re King's Estate,* 244 S.W.2d at 662.

Maryland asserts that there is but a scintilla of evidence supporting the jury's finding of total incapacity. Total incapacity occurs when a worker is disabled to the extent that employment at labor of the class performed when injured cannot be procured or retained. *Texas Employer's Ins. Ass'n v. Bartee,* 757 S.W.2d 451, 454 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Commercial Ins. Co. of Newark v. Puente,* 535 S.W.2d 948, 950 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.).

We find evidence and inferences supporting the finding. Duke testified that she could not go back to work full-time as a waitress at one of her prior jobs, the Golden Corral. Although she also testified that the work at the Golden Corral was more physically demanding than that of Pizza Hut, the work was similar. Duke also testified to her difficulties meeting work requirements and to the discomfort she experienced performing several types of work, including waitressing, retail sales, secretarial work, and newspaper distribution. She testified that she had no physical problems before the injury. Her chiropractor, Dr. Martin, testified that Duke's ability to lift was affected, as well as her ability to stand or sit for long periods of time. He testified that Duke's condition prevented her from getting or keeping employment. This evidence constitutes some probative evidence of total disability.

Maryland also asserts that the evidence is factually insufficient to support the jury finding of total incapacity, contending that the evidence of Duke's medical and work history is such that the jury's finding cannot be sustained. There is evidence that Duke has worked at several jobs since her injury. Job application and exit interviews reflect that she did not leave the jobs because of her injury.

Maryland points to evidence that Duke did not seek treatment for fourteen months after her release from the emergency room

the night of the accident. Her doctor did not advise her against seeking any type of employment. She was released from her doctor's care in July 1990, having been restricted from work for only one month. Dr. Martin testified that Duke was employable when not in pain.

On the other hand, Dr. Martin testified to Duke's total incapacity and to the physical effects of the injury. He also testified to Duke's inability to work at jobs requiring her to sit or stand for long periods of time. Duke testified to several types of duties she could no longer perform, such as lifting, pulling and pushing. She also testified that she could not sit and sew or type for more than a few hours per day, nor could she work as a waitress full-time. Duke testified that she "fudged" concerning her injury on one application in order to get the job. She also testified that she worked out of economic necessity, which is an important factor for the jury to consider. *Liberty Mutual Fire Ins. Co. v. Lynch,* 624 S.W.2d 698, 701 (Tex.App.—El Paso 1981, no writ). Considering all the evidence, we conclude that the jury's finding of total incapacity is supported by factually sufficient evidence.

Maryland also asserts that the evidence is legally and factually insufficient to support the jury finding that Duke's injury was permanent. Duke testified that she believed her problems were permanent. Although jury findings of permanent incapacity may be based solely on the plaintiff's testimony, *see e.g., American Home Assurance Co. v. Burnett,* 585 S.W.2d 793, 795 (Tex.Civ.App.—Texarkana 1979, no writ); *Rowland v. Standard Fire Ins. Co.,* 489 S.W.2d 151 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), in this case Dr. Martin also testified that Duke's injury was chronic and progressively degenerative. Thus, there is some evidence that this disability is permanent.

Maryland contends that the evidence of Duke's subsequent work history undermines this jury finding. Work history is merely one factor for the jury to consider in determining the extent and du-

ration of the disability. *Liberty Mutual Fire Ins. Co. v. Lynch*, 624 S.W.2d at 701. We do not view this evidence as conclusive against permanent incapacity.

Maryland also argues that since Duke was pursuing a formal education, she should not be compensated for her inability to perform manual labor. Maryland relies on *Lumbermen's Mutual Casualty Co. v. Villalpando*, 605 S.W.2d 705, 709 (Tex.Civ.App.—Corpus Christi 1980, no writ), where the court reasoned that since the worker's earning capacity was not diminished, the injury was not compensable, even though it prevented any heavy work. In *Villalpando,* the worker graduated from a technical school after his injury and obtained a less strenuous job at a higher wage.

In the present case, Duke had not received a degree by the time of trial. She was not employed full-time, and testified she could not work full-time. Dr. Martin and Duke testified that she could not perform jobs that would require her to sit or stand in one place for long periods of time. Such a disability could have an adverse effect on Duke's earning capacity. We find the evidence, as a whole, factually sufficient to support the jury finding that Duke's earning capacity was permanently diminished.

Maryland also asserts that the evidence is not legally or factually sufficient to support the jury's finding that Duke's incapacity occurred on April 1, 1989.

The evidence supporting this finding is indirect, as there was no testimony concerning the precise date the disability arose. Duke testified that she began having bad headaches and that the "pinch" in her tailbone developed two or three months after she started a new job in October 1988. Dr. Martin testified that Duke was incapacitated, but did not testify as to a specific date that the incapacity began. He did testify that this incapacity was caused, to a reasonable medical probability, by Duke's fall in October 1988. This is some

evidence that Duke's injury did not totally disable her until after her injury.

There is no evidence directly controverting the April 1, 1989, date. Maryland asserts that this date, being eight months prior to Duke's first chiropractic appointment, is speculative. However, the extent and duration of disability is an estimate the jury must often make. *See Reina v. General Accident Fire & Life Assurance Corp.*, 611 S.W.2d 415, 417 (Tex.1981); *American Home Assurance Co. v. Coronado*, 628 S.W.2d 818, 822 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.); *Rendon v. Texas Employers' Ins. Ass'n*, 599 S.W.2d 890, 894 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). A worker's disability need not commence on the date of injury. *See Houston General Ins. Co. v. Vera*, 638 S.W.2d 102, 106 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). There is evidence, discussed above, of when Duke's condition worsened. The date chosen by the jury is within this time frame. There is factually sufficient evidence to support this finding.

Maryland also contends that the award was erroneous because the benefits were awarded for 401 weeks from April 1, 1989, the date the total incapacity began, rather than from October 1, 1988, the date of the injury. TEX.REV.CIV.STAT.ANN. art. 8306, § 10(b),[1] provides:

> If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, *but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury.*

(Emphasis added.) This statute provides that, save for exceptions not applicable here, workers' compensation benefits may be awarded for no more than 401 weeks from the date of the injury.

Duke relies on TEX.REV.CIV.STAT.ANN. art. 8306, § 6,[2] which provides in part:

---

1. Repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7)–(9), 1989 Tex.Gen.Laws 114.

2. Repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7)–(9), 1989 Tex.Gen.Laws 114.

If the incapacity does not follow at once after the infliction of the injury or within eight days thereof but does result subsequently, compensation shall begin to accrue with the eighth day after the date incapacity commenced.... Provided further, that if such incapacity continues for four (4) weeks or longer, *compensation shall be computed from the inception date of such incapacity.*

(Emphasis added.)

 This section establishes the starting point from which benefits are measured where the incapacity arises after injury. Sections 6 and 10, read together, provide that permanent disability benefits may be awarded for the full 401 weeks only if the date of injury and the date of incapacity are the same. Where, as here, the incapacity arises later, benefits are measured from the date the incapacity commences and extend a maximum of 401 weeks from the date of the injury. *Texas Employers Ins. Ass'n v. Guidry,* 128 Tex. 433, 99 S.W.2d 900 (1937); *Jones v. Texas Employers Ins. Ass'n,* 128 Tex. 437, 99 S.W.2d 903 (1937); *Texas Employers' Ins. Ass'n v. Rogers,* 368 S.W.2d 21 (Tex.Civ.App.—Amarillo 1963, writ ref'd n.r.e.).

Duke argues that Section 10 only meant to limit total compensation benefits to 401 weeks, regardless of the relationship between the date of injury and the date of incapacity. Accepting this interpretation would require us to ignore the cases cited above and the plain language of the statute, which states that benefits cannot be recovered for a period "greater than 401 weeks from the date of the injury." Tex. Rev.Civ.Stat.Ann. art. 8306, § 10. This we decline to do.[3]

The judgment is reformed, with benefits measured from the date of the incapacity, April 1, 1989, and terminating 401 weeks from October 1, 1988, the date of the injury. As reformed, the judgment of the trial court is affirmed.

GRANT, Justice, concurring in part and dissenting in part.

I concur in the majority opinion except for depriving the worker of the 401 weeks' compensation to which total and permanent disability entitled her. To this conclusion, I say: NO WAY!

On at least nine occasions, the Supreme Court of this State has stated that the Workers' Compensation Act should be liberally construed in favor of the employee.[4] The failure of this Court to effectuate the broad coverage for which the statute was originally enacted is the antithesis of a liberal construction in favor of the worker. As the Supreme Court pointed out in *Hargrove v. Trinity Universal Ins. Co.,* 152 Tex. 243, 256 S.W.2d 73 (1953), one of the reasons for a liberal construction in favor of the worker is that the Workers' Compensation Act denies the worker his common-law rights. The employee has given up his common-law rights to seek compensation for a lifetime if he is disabled, and by the terms of the Workers' Compensation Act, the employee is entitled a maximum of 401 weeks for total and permanent disability.

Whenever possible, the Workers' Compensation Act should be construed as to avoid absurd consequences. *Fidelity & Cas. Co. of N.Y. v. Shores,* 329 S.W.2d 911 (Tex.Civ.App.—Fort Worth 1959, writ ref'd). We should no longer blindly follow the opinion of Section A of the Commission of Appeals in *Texas Employers' Ins. Ass'n*

**3.** We agree with the partial dissent and concurrence that this is bad law, but we consider ourselves bound by *stare decisis* because of the Commission of Appeals' decisions in *Texas Employers Ins. Ass'n v. Guidry,* 128 Tex. 433, 99 S.W.2d 900 (1937), and *Jones v. Texas Employers Ins. Ass'n,* 128 Tex. 437, 99 S.W.2d 903 (1937), both of which were adopted by our Supreme Court.

**4.** *Stott v. Texas Employers Ins. Ass'n,* 645 S.W.2d 778 (Tex.1983); *Goldman v. Torres,* 161 Tex.

437, 341 S.W.2d 154 (1960); *Superior Ins. Co. v. Jackson,* 156 Tex. 61, 291 S.W.2d 689 (1956); *Bailey v. American General Ins. Co.,* 154 Tex. 430, 279 S.W.2d 315 (1955); *Hargrove v. Trinity Universal Ins. Co.,* 152 Tex. 243, 256 S.W.2d 73 (1953); *Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671 (1950); *American General Ins. Co. v. Williams,* 149 Tex. 1, 227 S.W.2d 788 (1950); *Huffman v. Southern Underwriters,* 133 Tex. 354, 128 S.W.2d 4 (1939).

v. *Guidry*, 128 Tex. 433, 99 S.W.2d 900 (1937), because that opinion does not follow the mandate of the Supreme Court to construe the Workers' Compensation Act liberally in favor of the employee. Moreover, it reaches the absurd conclusion that the time period in which a worker may receive weekly compensation for a total and permanent disability may end before it begins. The Legislature did not intend such a travesty of justice, and the Commission's opinion in *Guidry* must surely rank as one of the ten worst decisions in the jurisprudence of this State. We have the opportunity, some fifty-five years after *Guidry*, to set the record straight for all injured workers who may encounter this anomaly.

The Workers' Compensation Act should be construed as a whole. *Texas Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, *answer to certified question conformed*, 196 S.W.2d 1023 (Tex.Civ. App.—Dallas 1946, no writ). All provisions of the Workers' Compensation Act must be construed together and in such a manner that, if possible, the provisions will operate in harmony. *Industrial Accident Board v. Parker*, 348 S.W.2d 188 (Tex.Civ.App.— Texarkana 1960, writ ref'd n.r.e.). Section A of the Commission of Appeals in *Guidry* did not try to harmonize the provisions or construe the Act as a whole. Justice Combs of the Beaumont Court of Appeals in the same *Guidry* case analyzed the applicable sections with a view toward harmonizing them. In that opinion, the court accurately and succinctly interpreted the Act:

> Section 10 [of the Workers' Compensation Act] does not relate to the accrual of compensation or the time when or within which compensation shall become due and payable. Instead it deals purely and solely with the amount of compensation for total incapacity measured in terms of percentage of wages and weeks of incapacity. The following section, section 11, in similar terms specifies the amount to be paid for partial incapacity. Section 11 further provides "that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one weeks from the date of injury."

> *The evident intent of the statute is to compensate the injured employee for the incapacity resulting from his injury and the accrual of the payments is contingent upon the occurrence of the incapacity.* The two sections together fix the amount to be paid for all incapacity; in extent, whether partial or total, or both; and, in duration, whether temporary or permanent, or both. The "compensation period," in each instance, refers to the period of compensable incapacity measured in terms of weekly compensation payments. The amount or number of such payments to which the employee is entitled is to be determined by the number of weeks of incapacity, and not by the lapse of time or calendar weeks, from the inception of the injury.

> As we have stated above, sections 10 and 11, which we have just discussed, have no reference to the accrual of the payments. The time when payments for incapacity shall accrue or become payable is the subject of section 6, above quoted. The first part of that section provides for the accrual of compensation in cases where the incapacity results within and extends beyond eight days from the date of the accident, and the second portion deals with the accrual of compensation resulting subsequent to the expiration of eight days after the accident. We think it is plainly the intent of this section to fix the time of the accrual of compensation in each and every instance of compensable incapacity, and where claim is made for compensation payments it affords a standard of determining when the payments claimed begin to accrue. The term "incapacity" refers to the particular period of incapacity for which the compensation is then being claimed. In the case before us compensation is being claimed for a total and permanent incapacity commencing October 10, 1933, and such incapacity did not commence within eight days after the accident, *the payments began to accrue with the inception of the incapacity, October 10, 1933.*

**238**

*Texas Employers' Ins. Ass'n v. Guidry,* 93 S.W.2d 508, 510–11 (Tex.Civ.App.—Beaumont 1935), *rev'd,* 128 Tex. 433, 99 S.W.2d 900 (1937) (emphasis added).

The Legislature has clearly mandated a recovery of 401 weeks' compensation for a total and permanent injury when the beginning of the incapacity is simultaneous with the date of the initial injury. Surely, the Legislature did not intend to deny a worker that full amount of compensation, and possibly give him or her no compensation at all, when the beginning of total and permanent incapacity was not simultaneous with the date of the initial injury.

I MUST DISSENT AS LOUDLY AS THE PRINTED WORD WILL PERMIT. THIS DISCRIMINATORY METHOD OF CALCULATION SHOULD BE ENDED.