**CIGNA INSURANCE COMPANY OF TEXAS, Appellant,**

**v.**

**Gloria Sue EVANS, Appellee.**

**No. 6–92–036–CV.**

Court of Appeals of Texas, Texarkana.

Feb. 9, 1993.

Rehearing Denied Feb. 9, 1993.

---

Gregory D. Smith, Ramey & Flock, Tyler, for appellant.

James A. Attaway, Jr., Quitman, Charles Attaway, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Cigna Insurance Company appeals from a jury verdict awarding Gloria Sue Evans benefits under the Worker's Compensation Act.

Cigna contends that the trial court erred in rendering judgment for Evans because the evidence conclusively establishes that she failed to file a timely claim and because there is no evidence or insufficient evidence to support the jury's finding that there was good cause for her failure to file a claim within one year of injury. Cigna further contends that the trial court erred by overruling its motions for directed verdict and judgment non obstante veredicto because Evans is barred from recovery. Cigna also contends that the trial court erred by ex-

cluding testimony and documentary evidence relating to Cigna's election-of-remedy defense and by refusing to submit a jury question on that issue.

Evans has filed a cross-point contending that the trial court erroneously entered judgment awarding total and permanent benefits calculated from the date of injury rather than the date incapacity began resulting in a loss of income, resulting in a loss of 109 weeks of compensation benefits.

Evans was employed by Shell Oil Company as a pumper. She was bitten by ticks on a Shell lease in July 1987. On August 2, 1989, Evans was diagnosed as having Lymes disease. During the twenty-five months intervening, although her health had begun to deteriorate, she was not aware that the tick bites had caused her health problems. She was hospitalized on August 6, 1989. In September, she told her supervisor that she had Lymes disease caused by the 1987 tick bites. Her employer filed a first report of injury with the Industrial Accident Board on November 29, 1989. On December 6, the carrier filed a notice with the Industrial Accident Board controverting her right to worker's compensation benefits. Immediately thereafter, she hired a lawyer and filed her written claim for worker's compensation benefits with the board.

At trial, the jury found that Evans had good cause for not giving timely notice and for not filing a timely claim for benefits, that the tick bites were work-related injuries, and that they were the producing cause of her total and permanent disability.

The trial court entered judgment for Evans for 401 weeks of compensation benefits and reasonable and necessary medical expenses. The court later entered a judgment nunc pro tunc changing the beginning date of the 401–week benefit period to July 1, 1987 (the date of the tick bite), thus reducing the amount of compensation she would receive under the judgment by 109 weeks because her incapacity to work did not begin until August 7, 1989.

Cigna first contends that the trial court erred in overruling its motions for directed verdict and judgment non obstante veredic-

to because the evidence conclusively establishes and the parties stipulated that she did not timely file her claim within one year of her injury and because there is no evidence to support the jury's finding that there was good cause for her failure to file a claim within one year. Cigna also argues that the evidence is insufficient to support the jury finding of good cause.

■ In reviewing the evidence for legal and factual sufficiency, we must first examine the record for any probative evidence to support the finding, ignoring all contrary evidence. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If we find some probative evidence, we then test the factual sufficiency of that evidence by considering all of the evidence, including evidence contrary to the jury's verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

The statute in effect at the relevant time in this case defined an injury or personal injury as "damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom." In this case, Evans has a disability caused by a disease. The disease was transmitted by tick bites. Evidence shows that Evans was bitten while working on a Shell lease.

There is evidence that Lymes disease has a lengthy incubation period and that it is not easily diagnosed. It is a progressive illness that often gradually increases in severity until it disables the infected person.

The first day that Evans was unable to work was also her last day of employment, August 6, 1989. She remained home in bed for several days and was then hospitalized for five days. She returned home and remained on intravenous antibiotics with nurses in attendance through August and into September 1989.

The Texas worker's compensation law then in effect provided:

**Art. 8307, sec. 4a. Notice of injury; claim for compensation.**

Unless the Association or subscriber have notice of the injury, no proceeding

for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber *within thirty (30) days after the happening of an injury or the first distinct manifestation* of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made *within one (1) year after the occurrence of the injury or of the first distinct manifestation* of an occupational disease ... For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board.

**Art. 8307, sec. 7a. Failure to file report; limitation on filing of claim.**

Where the association or subscriber has been given notice or the association or subscriber has knowledge of an injury or death of an employee and fails, neglects, or refuses to file a report thereof as required by the provisions of Section 7 of this Article, *the limitation in Section 4a of this Article in respect to the filing of a claim for compensation shall not begin to run against the claim* of the injured employee or his dependents entitled to compensation ... *until such report shall have been furnished as required by Section 7* of this Article.

TEX.REV.CIV.STAT.ANN. art. 8307, §§ 4a & 7a [1] (emphasis added).

Section 7b provides that the Industrial Accident Board is to immediately furnish claim forms to the injured employee that inform the employee of the filing requirements of Section 4a of the Article.

■ If a person does not believe that his or her injury is severe or is mistaken as to its cause, "good cause" can be established for the failure to timely file. The definition provided to the jury in this case has been approved in numerous other cases, including *Travelers Ins. Co. v. Echols*, 508 S.W.2d 422, 424 (Tex.Civ.App.– Texarkana 1974, no writ). Good cause was defined for the jury as existing when a

person has "prosecuted his claim with the diligence an ordinarily prudent person would have used under the same or similar circumstances. The good cause must have arisen within one year from the date of injury and continued until the claim was filed, must have been believed and relied on by the plaintiff and must have caused the delayed filing." The test is that of ordinary prudence, that is, whether the claimant prosecuted the claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. The totality of the claimant's conduct must be considered in determining whether he or she acted with such ordinary prudence. *Moronko v. Consolidated Mutual Insurance Co.*, 435 S.W.2d 846 (Tex.1968).

Cigna argues that no evidence indicating good cause has been shown, and also argues that the evidence is insufficient to support the jury's finding on that question. There is uncontroverted evidence that Evans was not aware of the nature of her disease and the cause of her symptoms until August, 1989, and that she was then hospitalized and remained bedridden through September. In mid-September 1989, she informed her supervisors that she had been diagnosed with Lymes disease caused by the 1987 tick bites. They came to her home and interviewed her at length at that time.

■ Cigna argues that Evans' proof of good cause for failing to file within one year of injury ended at that point, since she was finally aware that her ongoing illness was in fact the result of an on-the-job injury. However, if her employer did not file its first report of injury until November 29, 1989, with the Industrial Accident Board, as Evans contends is shown by the notice of controversion, her failure to file was entirely excused until that date in accordance with Article 8307, § 7a. Cigna argues that there is no evidence of the date upon which the employer filed its report. The document in evidence is the carrier's "Notice of Controversion of Right to Com-

---

**1.** Repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10) to (12), eff. Jan. 1, 1991 (current version TEX.REV.CIV.STAT.ANN. art. 8308–5.01, 5.02, 5.03, 5.06 (Vernon Supp.1993)).

pensation." This document shows that the carrier's first written notice of injury was received on November 29, 1989. This is not direct evidence of the date that the Industrial Accident Board received notice, but a reasonable inference can be made that the subscriber would send the E–1 report on the injury to the Industrial Accident Board on or about the same time that it would notify the Industrial Accident Board. Furthermore, Section 7b of the Workers' Compensation Act requires the Industrial Accident Board to "immediately furnish the injured employee claim forms" whenever a report of injury is filed. Evans testified that after notifying her employer about the injury, she did not receive anything concerning her tick bites from the Industrial Accident Board until she received a copy of controversion form. All these circumstances are evidence from which the jury could conclude as to whether Evans was timely in her filing.

■ Cigna argues that the notice of controversion document showing that date was submitted only for a limited purpose and may not be considered outside that purpose. The colloquy surrounding its admission follows.

MR. JIM ATTAWAY [Plaintiff's Counsel]: We offer this [notice of controversion] into evidence.

MR. BLACK [Defense Counsel]: We object to Plaintiff's Exhibit No. 13 as being hearsay, not properly authenticated and, therefore, I don't think it's admissible, Your Honor.

MR. CHARLES ATTAWAY [Plaintiff's Counsel]: Your Honor, in response to that document, this document was furnished to us by the Defendant insurance company in response to a request for production. It's obviously from their papers filed by the employer of Shell Oil Company through—I mean through the carrier in the case. It's the carrier's own document, Your Honor.

MR. BLACK: Your Honor, it also concerns receipt which is not admissible.

MR. CHARLES ATTAWAY: Your Honor, the sole purpose of offering this is to show that *it was filed at a time before the Plaintiff, in fact, filed a claim for compensation.*

THE COURT: Did the witness testify that she, in fact, received this particular document?

MR. CHARLES ATTAWAY: Yes, sir. Yes, sir, she did.

THE COURT: Very well. It will be admitted.

(Emphasis added.)

The document was then read in its entirety to the jury. The court did not state that it was admitting the document for a limited purpose and did not instruct the jury to consider it only for a limited purpose. Counsel for Cigna did not request such an instruction nor object to the failure of the court to give such an instruction. Rule 105(a) of the Texas Rules of Civil Evidence requires that upon request a trial court should instruct a jury if evidence should be restricted in scope. In the absence of any directive to the fact finder to consider a piece of evidence only for a limited purpose, the fact finder may consider it for any and all purposes. Thus, the jury was not limited in its consideration of this document.

■ Accordingly, we now move to an examination of this evidence under Article 8307, Sections 7 and 7a. Evans contends that she was excused by this article from filing her written claim with the board until the mandated report was filed with the board by the subscriber. *Houston General Insurance Co. v. Vera*, 638 S.W.2d 102, 106 (Tex.App.–Corpus Christi 1982, writ ref'd n.r.e.). Section 7 requires an employer to file a report with the board within eight days of the injury and absence from work. Section 7a provides that when an employer fails to file the report, the time limitations for an employee claim as set out in Section 4a are tolled until the report is actually filed. Cigna argues that the reporting requirement of Section 7a does not apply to this injury because the injury and Evans' absence from work were not contemporaneous. In *Lowe v. Pacific Emp. Indem. Co.*, 559 S.W.2d 370 (Tex.Civ.App.– Dallas 1977, writ ref'd n.r.e.), the Dallas court examined a previous version of Sec-

tion 7 and held that when a claimant was not absent from work within eight days after her accident, the employer, who had notice of injury, was not required to file the report.[2] The court therefore held that Section 7a did not apply, and no tolling of the statute took place. Even though the earlier version of the statute may have required this result, the version in effect at the relevant time does not. In December 1989, Section 7 stated that:

> After the occurrence of an accident resulting in an injury to an employee, causing his absence from work for more than one (1) day, or after the employee notifies the employer of a definite manifestation of an occupational disease, a written report thereof shall be made *within eight (8) days following the employee's absence from work and notice thereof to the employer* ... The subscriber shall deliver a copy of the report to the association.

TEX.REV.CIV.STAT.ANN. art. 8307, § 7[3] (emphasis added). The statute clearly contemplates that the triggering event is not just the injury, but the injury *and* a correlated absence from work. In this case, although the injury occurred two years earlier, the uncontroverted evidence shows that Evans was first absent from work and that she gave notice to her employer of her injury in September of 1989. The clear terms of Section 7a therefore provide that the time limitation of Section 4a did not begin to run against her claim until the report was furnished as required under Section 7. The evidence indicates that Evans hired a lawyer and filed her written claim with the board immediately upon her receipt of the carrier's December 6 written controversion of that claim. That document further

shows that the report was filed with the carrier on November 29, 1989.

■ The specific language of Section 7a also provided that the one-year time limitation set out by Section 4a would not begin to run until the report was furnished to the board. Therefore, her one-year statute of limitation did not begin to run until her employer filed its report with the board. Her claim was clearly filed during that one-year period. Even if the limitations period was not tolled in this manner, the evidence of continuing good cause for her failure to file within one year of the injury is compelling. Until the cause of her illness was identified as resulting from an on-the-job injury, she could not have filed a claim. The evidence shows that Evans was physically unable to file the claim for an extended period of time after she was finally diagnosed with Lymes disease and that she initiated the required steps by informing her employer about the injury while still bedridden. The evidence shows that the employer did not notify its carrier until November 29, 1989, and that she immediately filed her claim upon receipt of the carrier's written controversion dated December 6th.

We find these factors are adequate to support the jury's finding that she had good cause for not filing her claim within one year of her injury and that the good cause extended to the date of filing. These points of error are overruled.

Cigna next contends that the trial court erred by refusing to permit it to introduce evidence about its election-of-remedies defense and to include that defense in the charge to the jury. It contends that her filing of health insurance claims during the period of time that she was hospitalized

---

**2.** Section 7, entitled "Record of injuries; reports," formerly read:

Every subscriber shall hereafter keep a record of all injuries, fatal or otherwise, sustained by his employees in the course of their employment. Within eight (8) days after the occurrence of an accident resulting in an injury to an employee, causing his absence from work for more than one (1) day, or within eight (8) days after the employee notifies the employer of a definite manifestation of an

occupational disease, a written report thereof shall be made to the Board on blanks to be procured from the Board for that purpose. (Taken from *Lowe v. Pacific Emp. Indem. Co.,* 559 S.W.2d at 371 (Tex.Civ.App.–Dallas 1977, writ ref'd n.r.e.).

**3.** Repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10) to (12), eff. Jan. 1, 1991 (current version TEX.REV.CIV.STAT.ANN. art. 8308–5.04, 5.05 (Vernon Supp.1993)).

and otherwise injured precludes her effort to now obtain any recompense through worker's compensation for her injury. Cigna argues that this constitutes an election of remedies to which she must be held and that its evidence on this issue should have been admitted.

 The election doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980).

 The trial court allowed Cigna to put on proof outside the presence of the jury to attempt to establish its defense of the election of remedies. Cigna contends that two health insurance claim forms should have been admitted into evidence. These forms contained a typewritten "x" placed in the "no" block in answer to whether there was a work-related injury. (Cigna also attempted to introduce this on the basis that it was an admission against interest.) These forms were not made part of the record on appeal, but there is nothing in the record to suggest that these forms bore a signature. Evans testified that she did not sign these forms, that she did not fill out such forms, and that she did not provide such information. There was no evidence to the contrary. Thus, this could not have been construed to be an informed choice made by Evans, nor could it be construed as an admission against interest. Furthermore, at a time when a worker does not know whether her injury was work related, her action in regard thereto cannot be considered as the exercise of an informed choice. *See Bocanegra*, 605 S.W.2d 848.

 Cigna did not present in the evidence offered outside the presence of the jury any evidence that showed the remedies were inconsistent. It did not offer evidence concerning the terms of Evans' group health policy, and we are left to speculate whether the medical policy covered all injuries or if it excluded on-the-job injuries. Evans testified that she paid the premiums on the group health policy; therefore, under the collateral source rule, she may have been entitled to receive these additional benefits that she had obtained at her expense. *See Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 935 (Tex.1980). A worker's compensation claimant's recovery of medical expenses from a third-party insurer does not deprive the claimant of her right to recover the value of such services from a worker's compensation carrier. *Standard Fire Ins. Co. v. Ratcliff*, 537 S.W.2d 355 (Tex.Civ. App.–Waco 1976, no writ). Cigna has not mentioned any change in the Worker's Compensation Act that modified this holding, and we have found none.

We find that Cigna did not lay a proper predicate or show by its bill of exception that it was entitled to introduce the evidence of this collateral insurer. Thus, such evidence was not admissible before the jury, and the trial court properly refused to submit the defense of election of remedies as a part of the charge. These points of error are overruled.

CROSS–POINT:

 Evans argues that the trial court erred in entering judgment awarding her total and permanent benefits calculated from the date of injury rather than the date incapacity caused her to be unable to work. The result was a loss of 109 weeks of compensation benefits totalling $24,416. In a divided opinion, this Court recently held that the trial court's action is the proper way of applying the worker's compensation statute.[4] *Maryland Casualty Co. v. Duke*, 825 S.W.2d 232, 236 (Tex.

4. In a strongly worded dissent, Judge Grant protested the inequity of this statutory interpretation. It penalizes a worker whose disability does not arise immediately after the initial injury. The delay in the onset of the disability does not mean that the disability is any less severe. The majority also recognized the inequity but felt bound by the wording of the statute. The Texas Supreme Court at first granted a writ on the *Duke* case, but then the court withdrew the writ as improvidently granted. Therefore, this grossly unfair provision in the worker's compensation law is left to be corrected by legislative enactment.

App.–Texarkana 1992, writ denied, improvidently granted). The majority held that where, as here, "the incapacity arises later, benefits are measured from the date the incapacity commences and extend a maximum of 401 weeks from the date of the injury." The cross-point is likewise overruled.

The judgment of the trial court is affirmed.